## BANK OF BLOUNT COUNTY v. A. D. DUNN et al.

Eastern Section. May 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

Gamble, Crawford & Goddard, of Maryville, for appellant.
Brown & Johnson, of Maryville, for appellees.

DeWITT, J. The Bank of Blount county has appealed from the
Chancellor's decree that a deed of A. D. Dunn to D. S. Bird and
Grace Waters of July 6, 1926 was not fraudulent in fact as well as
in law. In the deed the consideration recited was $6500 paid in cash,
but it appeared that when the bill was filed on July 9, 1926 the
conveyees had paid only $1271.38 of the consideration, though they
were preparing to pay $5000 to one John Martin in satisfaction of
a vendor's lien note held by him and the balance in settlement of
taxes on the property. The Chancellor decreed that the conveyance
be rescinded, but as it was not fraudulent in fact he decreed to
Miss Waters and D. S. Bird a lien on the property involved to se-
cure said sum of $1271.38 after the satisfaction of the note of
Martin secured by vendor's lien on the property. The Bank of
Blount county insists upon this appeal that the Chancellor should
have found that the conveyance was fraudulent in fact by reason
of alleged guilty participation by Bird and Miss Waters in the
fraudulent intent and purpose of the conveyor A. D. Dunn.

The property involved is a lot of land fronting 123 feet on Depot
street in the town of Maryville.

In the original bill the basis of the charge of fraud as alleged
was that an adequate consideration was not paid for the prop-
erty; that it was worth at least $10,000. A large amount of testi-
mony was taken upon this issue as to adequacy of consideration.
The defendants D. S. Bird and Grace Waters did not testify prior
to the first hearing by the Chancellor and at the October term
1927 the Chancellor found that the deed was both fraudulent in
law and in fact. Thereupon the said defendants Bird and Miss
Waters filed petitions averring that they did not object to testify-
ing, were not seeking to withhold any facts from the court, but
had refrained from testifying because they considered that the
sole issue as to fraud was the adequacy or inadequacy of the con-
sideration paid and to be paid by them; and they prayed that the
cause be reopened with leave to them to give their depositions, and
then reheard and decided. These petitions were sustained, the

cause was remanded to the rules with leave to them to testify and they did give their depositions. At the final hearing the Chancellor found as follows:

"After a very careful consideration of the entire record in this cause, the court has been unable to find sufficient facts to conclude that the defendants Miss Grace Waters and D. S. Bird are guilty of any evil design or scheme with the defendant A. D. Dunn to defraud, hinder or delay the defendant bank in the collection of its debt. It is true that there are several suspicious circumstances disclosed in this record tending to show that these defendants, Miss Grace Waters and D. S. Bird, were probably in some way connected with the fraud perpetrated by A. D. Dunn, but the court is of the opinion that they have been satisfactorily explained."

The first assignment of error is that the Chancellor erred in thus reopening the case for further proof after he had made his finding of facts and delivered his opinion at the October term; and in permitting the defendants Grace Waters and D. S. Bird to give their depositions after the case had been finally heard and determined.

In our opinion this action of the Chancellor did not constitute any abuse of his discretion. In Gibson's Suits in Chancery, 2 Ed., section 541, it is properly said that where in any case the court can see that a party has a clear right so that injustice will be done by dismissing his bill, but his suit fails from oversight or neglect not culpable, it is the duty of the court to remand the cause for further proof, that justice may be done. In a footnote the learned author says that it is his experience that it is impolitic to remand a cause for further proof on a point as to which the evidence is conflicting, for the reason that there is a strong temptation to introduce false testimony when the parties realize that the case will turn on the decision of a disputed point; that causes should be remanded, not for more proof on a disputed question, but for proof on some question wholly, or in part, overlooked or ignored. But in our opinion whenever such a situation arises, the court should be free to make determination according to the facts and circumstances of the particular case, in order that it may be always free to do full justice. The subject is further discussed in section 1140; and the power and duty of the Chancellor under the circumstance of the case are laid down in clear language and upon just principles.

In their petitions Bird and Miss Waters averred that they were very much surprised by the attitude assumed by the counsel for complainant at the hearing, because in the pleadings and in the taking of the testimony the sole insistence of complainant was that

there was an inadequate consideration, and they did not testify because they thought that the testimony given was ample upon this issue; that statements made as to relationship with the defendant A. D. Dunn were not true but had been prejudicial to them. They set forth further many statements of facts to which they would testify if given an opportunity. They averred their perfect willingness to testify and set forth their acts and doings in these transactions before the court. The Chancellor was warranted from the record thus presented to him in concluding that these defendants had been taken by surprise, and that justice required that they should be given an opportunity to testify and give their explanation of these transactions. The first assignment of error is therefore overruled.

The Bank of Blount county filed the bill in this cause against A. D. Dunn, S. H. Dunn, trustee, Grace Waters, D. S. Bird, Thurman Ailor and James Bird, to have declared null and void a series of instruments executed by A. D. Dunn and his wife in the years 1925 and 1926. It alleged in the bill that A. D. Dunn was justly indebted to it in the sum of $6300, evidenced by note dated June 6, 1925, due ninety days after date, with interest and attorney's fee of ten per cent, as provided in the note. The note was endorsed by Chas. W. Dunn. This indebtedness was admitted by A. D. Dunn and the Chancellor awarded against him a decree for $7803.18.

The Chancellor found and decreed that certain instruments executed by A. D. Dunn and wife were executed and delivered for the purpose of hindering, delaying and defrauding the Bank of Blount county in the collection of its indebtedness, and that the beneficiary thereunder, James Bird received them for the purpose of aiding A. D. Dunn in hindering, delaying and defrauding his creditors. These instruments are briefly described as follows:

1. A deed of trust to S. H. Dunn, trustee, dated June 16, 1925 for the alleged purpose of securing James Bird in the principal sum of $15,000, evidenced by three notes for $5000 each, due three years after date. This covered the property involved on this appeal.

2. A deed of trust executed on June 22, 1925 by Chas. W. and A. D. Dunn to S. H. Dunn, trustee, to certain lots of land in Blount county, to secure James Bird in the sum of $1000 evidenced by note due three years after date.

3. A chattel mortgage, executed on June 30, 1925 by A. D. Dunn to James Bird to secure "any amount under $2000."

4. A deed of trust dated June 16, 1925 to S. H. Dunn, trustee, to 100 acres of land in Blount county to secure James Bird in the sum of $8000, evidenced by four notes dated June 16, 1925, due three years after date.

All of said instruments were of record in the Register's Office of Blount county when the deed to D. S. Bird and Miss Grace

Waters was executed. The Chancellor, as aforesaid, held them to be fraudulent on the part of both grantor and grantee and beneficiary and set them aside. From this portion of his decree no appeal was taken.

The Chancellor further decreed that by reason of an attachment issued in this cause on July 10, 1926, the complainant had a lien upon the personalty described in the decree and the land covered by the aforesaid instruments which were set aside, including the property involved on this appeal; but he decreed that Miss Grace Waters and D. S. Bird have a lien on said property so involved, after the satisfaction of the deed of trust or note of J. C. Martin, to secure the sum of $1271.38, the amount of money they actually paid on the purchase price of the property. This lien was declared to be paramount to the lien of complainant under its attachment. The court further ordered a sale of said real and personal property. In behalf of the Bank of Blount county, it is insisted upon this appeal that the Chancellor erred in decreeing that the sale made by A. D. Dunn to D. S. Bird and Miss Grace Waters was not fraudulent in fact as well as fraudulent in law; that Bird and Miss Waters are entitled to a lien upon the property in question prior to the lien of the Bank of Blount county for the sum of $1271.38. These propositions embody the principal issue before this court, except that it is also insisted that the Chancellor erred in finding, after the cause had been reheard, that at the time Miss Grace Waters and D. S. Bird purchased the property and accepted the deed, there had been filed in the chancery court an order dismissing a suit of Tom Cochran v. A. D. Dunn, et al. This latter insistence relates to the question of notice of a litigation pending at the time of said purchase, and it will be dealt with later in the course of this opinion.

It should be stated here that D. S. Bird and Miss Grace Waters have neither appealed from the finding that their deed was fraudulent in law, nor have they filed any assignments of error in this court. The question is whether or not their deed is fraudulent in fact.

Upon the subject of the right of creditors under such circumstances the law is now codified in Tennessee. The uniform law relating to fraudulent conveyances, chapter 125 of the Acts of 1919, sections 9 and 10, Shannon's Code Supp., sections 3143a9, 10, provides that where a conveyance or obligation is fraudulent as to the creditor, such creditor, when his claim has matured, may as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim. This rule is of long standing in Tennessee.

In a line of cases beginning with Alley v. Connell, 3 Head, 582 and Brooks v. Caughran, 3 Head, 464, the rule is that a deed fraudulent in fact is absolutely void; and that if a deed be void for fraud in fact the creditor is entitled to void it without prepayment to the fraudulent purchaser of the purchase money. The grantee is regarded as a guilty participant in the fraud and not entitled to reimbursement, either for purchase money or other consideration, for expenses paid, or liabilities incurred, on account of it. But the rule is further, as stated in Alley v. Connell, that where the deed is only fraudulent by construction of law, the purchaser will be protected to the extent of refunding his purchase money or allowing the conveyance to stand as security for it. In that case it is said in this connection, "In the language of Chancellor Kent in the case referred to (Boyd v. Dunlap, 1 Johns. Ch., 479) 'nothing can be more equitable than this mode of dealing with these conveyances of such indecisive and dubious aspect, that they cannot either be entirely suppressed or entirely supported with satisfaction and safety.' This principle has been applied to the case of a purchase at a great undervalue, connected with other inequitable or suspicious circumstances. So a deed with a small consideration was set aside in equity in favor of a creditor so far as to let in his debt." The court further said: "A just discrimination is made between intentional fraud and constructive fraud, or fraud in law. A conveyance fraudulent in fact is absolutely void, and is not permitted to stand as security for any purpose of reimbursement or indemnity; but it is otherwise with a deed obtained under suspicious circumstances, or which is only constructively fraudulent."

These principles, so familiar to the profession, so extensively treated in the text books and in many reported cases, have never been departed from, have frequently been restated and applied, in this State; and they are controlling upon the case before us. See Hickman v. Perrin, 6 Cold., 142, Turbeville v. Gibson, 5 Heisk., 586, Lockhard v. Brodie, 1 Tenn. Ch., 388; Hartfield, Administrator v. Simmons, 12 Heisk., 253; James v. Joseph, 156 Tenn., 417, 1 S. W. (2d), 1017.

Further reciting familiar law, we quote from 26 C. J., 1061 the following concise definition of fraud in law, or constructive fraud:

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud."

In Gibson's Suits in Chancery, 2d Ed., section 936, another and clear definition of constructive frauds is given as follows:

"Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals, or which if generally permitted would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been connected with any selfish, evil design, or may amount in the opinion of the person chargeable therewith to nothing more than what is justifiable or allowable."

In the case before us it is undisputed that the appellees have actually paid out $1271.38 on the purchase price, of the property. The conveyor must be treated as an insolvent debtor making this as well as the other conveyances with the fraudulent purpose of hindering, or defeating the complainant in the collection of its debt. These are found to be facts by the Chancellor and his finding on these points is unappealed from. Under the rule in Alley v. Connell and other cases, if the circumstances are merely suspicious and by a preponderance of the evidence it does not appear that the grantees under the deed had any fraudulent intent themselves, or knowledge of the fraudulent intent of the grantor and participation therein, they would be entitled to the lien allowed them by the Chancellor for reimbursement. The rules upon this subject have come down to us from the Statute of 13 Elizabeth, which provides inter alia that a conveyance "upon good consideration and bona-fide and lawfully conveyed or assured to any person or persons, or bodies politic or corporate, not having at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such covin, fraud or collusion," shall not be fraudulent.

This principle is embodied in the aforesaid sections of the uniform law relating to fraudulent conveyances, in the clause, "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." Upon this subject the Chancellor found as follows:

"On the 6th day of July, 1926, A. D. Dunn sold the property in question to Miss Grace Waters and D. S. Bird. The deed recited in its face a consideration of $6500. This deed, while it recites a consideration of $6500 in hand paid, is not true in all things; the record discloses that the consideration of $6500 includes a $5000 purchase money lien note payable to J. C. Martin, that the defendants Miss Grace Waters and D. S. Bird, paid in cash $1271.38, and assumed the taxes for 1926. The taxes have not been paid.

"Prior to the making of the deed, Miss Waters and also D. S. Bird, made some investigation as to the real value of the property. They also employed two attorneys to investigate the title to this property. Their attorneys found certain trust deeds

of record in the Register's Office of Blount county, against this property, of which the consideration stated in said trusts was of more value than the value of the lots, and they also found a suit filed against A. D. Dunn in the Chancery Court of Blount County styled Tom Cochran -vs- A. D. Dunn, et al., in which the property in question was attached under a fiat issued by Judge A. C. Grimm, which attachment issued on the 10th day of September, 1925. This suit has not been dismissed by the Chancellor. The above facts were brought to the attention of the defendants, Miss Grace Waters and D. S. Bird, by their attorneys; however, the record further discloses, and without contradiction, that the defendants Miss Grace Waters and D. S. Bird, purchased this property on the recommendation and advice of their counsel that they were safe in making this purchase, since the trust deed was to be released and since an agreed order had been filed in the chancery court in the cause of Tom Cochran -vs- A. D. Dunn, et al., dismissing same. The court further finds, however, that on the date that Miss Grace Waters and D. S. Bird purchased and accepted the deed to the property in question, the agreed order above referred to had neither been approved by the Chancellor nor entered upon the minutes of the court.

"The record further discloses by a preponderance of the evidence that the property in question is worth more than $10,000. This price is substantiated by the two defendants themselves. They testify however, that they bought the property for speculation. The price paid when compared with what the defendants thought they had this property sold for, to-wit: $10,000 is sufficient to cause this court to hold, together with other facts, that the transfer amounts to a fraud in law."

The appellant relies upon certain facts alleged to be shown in the record as badges of fraud shifting the burden to the appellees to show that they were free from actual fraud; and insists that the appellees have not carried this burden. As a general rule the burden of proving fraud is upon the party attacking the deed. Gaugh v. Henderson, 2 Head, 629; Washington v. Ryan, 5 Bax., 622; Walters v. Brown, 46 S. W. 777. But if the evidence of the party attacking a deed for fraud, makes out a prima-facie case, or places the deed under great suspicions of fraud, it is incumbent upon the claimant under the deed to prove at least that he had actually paid for the property. Smartt v. Waterhouse, 6 Humph., 158; Alley v. Connell, supra; Farnsworth v. Bell, 5 Sneed, 531. There is no dispute that the appellees actually paid on the purchase price of this property the sum of $1271.38—$500 being paid to Martin, the holder of a first lien of a debt, overdue, and the balance to the attorney for A. D. Dunn.

We will now set forth and discuss these alleged badges of fraud.

(1) The fact that the debtor was embarrassed.

Both Miss Waters and D. S. Bird testified that they did not know that A. D. Dunn was hard pressed or embarrassed. Miss Waters was bookkeeper for D. S. Bird in a garage and automobile business and was not related to A. D. Dunn. The record does not show that she had ever had any business transactions with him. D. S. Bird was a distant cousin to A. D. Dunn, had had one or two trades with him and had stayed a judgment for Sam Dunn against whom it had been rendered, as surety for A. D. Dunn. He stayed it for the sake of Sam Dunn and never had to pay anything on it. There is no evidence that either Miss Waters or D. S. Bird knew that A. D. Dunn was selling the property for the purpose of defeating the Bank of Blount county in the collection of its note against him. Both of them testified that they did not enter into the transaction for the purpose of aiding Dunn in hindering, delaying or defeating any of his creditors.

(2) The fact that the debtor was insolvent; and the pendency of a suit.

The basis of the claim that the appellees knew this fact is that to them must be imputed the knowledge gained by their attorneys that at the time of their purchase there was pending in the chancery court at Maryville a suit of T. R. Cochran v. A. D. Dunn, et al., in which the property was attached and an injunction was resting upon A. D. Dunn against his selling the property, and the property was actually in the custody and control of a receiver appointed by the court. A transcript of the record in that case is a part of the record in this cause. In the bill it was charged that A. D. Dunn had become very heavily involved, had disposed of much of his property and had fraudulently made the conveyance hereinbefore set forth for the use and benefit of James Bird.

From the testimony of Miss Waters and D. S. Bird, it appears that they employed two attorneys to investigate the title to the property; that their attorneys, or one of them, did mention the pendency of this suit of Cochran, but told them that it had been settled; and that they relied upon this assurance. The Chancellor found that a decree in that cause had been filed for entry, dismissing the suit. The record shows that such decree was not actually entered until October, 1926; but it may fairly be inferred that an agreement for settlement had been made when the deed was executed. There was evidently no false representation about this matter. Of course, the knowledge of the attorneys for the appellees, gained in the course of their employment, would be imputed to the appellees, but it is fairly evident that the appellees and their counsel relied in good faith upon the fact or assurance that the suit was settled by agreement, although no decree was

actually entered until October. Even if the agreement had not been made at that time, the appellees and their counsel evidently thought that it had been made, and it is not justly to be inferred that they were intending to assist Dunn in violating the injunction and disposing of his property so as to defeat the claim of the Bank. Of course, they could not do so under such circumstances. It is not reasonable to infer that they and intelligent counsel representing them could think that they could do so. They would not accept a title under such circumstances. This was not a voluntary conveyance. These parties paid out a substantial sum and were preparing to pay all the balance of the consideration immediately, when the bill was filed in this case. The Cochran suit was eliminated as affecting their title. They had plainly all or much to lose had it proceeded to a successful termination.

The rule is that knowledge of indebtedness, or even the insolvency of the grantor, standing by itself, does not put the grantee on inquiry, but other suspicious circumstances must be shown, among them being an inadequacy of price. There is no evidence that these appellees knew anything about the indebtedness of Dunn to the Bank of Blount County, or any other indebtedness of his, except what was recited in instruments of record.

(3) Inadequacy of consideration.

The Chancellor found that the property was worth at least $10.000. We are not satisfied to disturb this finding, although several witnesses estimated the value to be in the neighborhood of what the appellees agreed to pay for it. The appellees were buying the property with the hope of reselling it for at least $10,000. It is clear from the evidence that they were buying it for speculative purposes. A. D. Dunn had bought this property in 1919, when values were higher, for $20,000. and he spent about $3000 in making improvements upon it. It is likely that this was an excessive price, and the proof shows that by 1926 there had been a considerable decline in values of real estate in Maryville, and it was difficult to sell such property. A. D. Dunn sold a part of the land for $4000. A number of witnesses testified that the property actually involved herein was worth from $10.000 to $12,000 or a little more. A. D. Dunn had placed upon it a fraudulent second mortgage to secure a debt of $15,000 alleged to be due James Bird for borrowed money. Martin held a first mortgage for $5000 and a considerable amount of accumulated interest. The evidence shows that A. D Dunn was extremely anxious to sell this property, was desperately anxious to convert all of his property into money; that he approached the appellees several times offering to sell the property to them, and that this final agreement on their part to purchase at $6500 was pursuant to the only offer that he could get. We think that under the circumstances the Chancellor was warranted in hold

ing that this transaction was a fraud in law, but we do not think that the price agreed to be paid showed fraud in fact. There is no evidence that the grantees knew that Dunn was selling at this price in order to defraud the Bank of Blount County or his other creditors; or that they fraudulently refrained from making an inquiry as to his purpose. There is no proof that their attorney knew of his fraudulent intent. We cannot say that the price was grossly inadequate and was appallingly low so as to shock the conscience of the court. A mere fraudulent intent on the part of the grantor will not invalidate a conveyance or transfer which is accepted by the grantee in good faith and for a valuable consideration.

4. Secrecy or haste in making the transfer.

We do not think that the fact that this transaction was consummated in the business house of the appellees instead of in a lawyer's office is a badge of fraud. It is not reasonable to infer that this was so unusual as to excite suspicion. It appears that when the deed was probated in the county court for registration it was marked with the words, "do not print." If the appellees had this written on the deed or even knew of it, it would naturally raise suspicion; but the statements of both the appellees that they knew nothing about this writing on the deed, were not parties to it in any way, and did not know why it was put there, is undisputed. It therefore cannot be imputed to them. As A. D. Dunn was practicing frauds it is easy to infer that he wrote this on this deed, or had it done after it had been sent by the appellees for probation and registration.

5. False recitals of consideration or other matters in the deed.

The fact that the parties had not paid all of the consideration when the bill was filed in this cause is not a badge of fraud under the circumstances. It does not fall under the rule that an incorrect statement of the consideration of a conveyance is a badge of fraud. The evidence is undisputed that these parties were preparing immediately to pay the balance of the consideration, that their arrangements were under way, that nearly all of it was to be paid to Martin in satisfaction of his mortgage debt. They could not get a clear title to the property without so paying the money. It was a matter between them and Martin into which no fraudulent intent as to Dunn's creditors could enter.

6. The transfer of all of his property by Dunn.

There is no evidence that the appellees knew that the deeds of trust alleged to secure debts due James Bird were fraudulent, or that any of the other conveyances made by A. D. Dunn were fraudulent. The rule is that the transfer of all or nearly all of his property by a debtor, especially when he is insolvent or greatly embarrassed financially, is a badge of fraud, not being in the usual

course of business. 27 C. J., 493. But by "badge of fraud is meant only a fact that would tend to shift the burden of proof, and which if not explained on the ground of innocence, would sustain the charge of fraud." The attorneys representing the appellees were not bound to search the records as to transactions of the grantor, other than those affecting the property herein involved; and there is no proof that these attorneys or the appellees knew of these other transactions. In fact, the appellees are not controverted in their testimony that they did not know of them. Therefore the predicate is not shown, for the insistence that the appellees were affected by any knowledge, actual or constructive, of other transactions which taken with this transaction would show that the debtor was and had been transferring all of his property. The burden was therefore not upon the appellees to rebut any presumption of fraud from this fact of transfer of all of the debtor's property; and under these circumstances there was no duty upon them to make inquiry as to the intent and purpose of Dunn in making all these conveyances.

7. Relationship of parties.

A. D. Dunn is a distant cousin of D. S. Bird. D. S. Bird and James Bird are first cousins and James Bird is an uncle of A. D. Dunn. Miss Grace Waters was not related to any of these parties, but was a business associate to D. S. Bird. These facts do not constitute badges of fraud. The relationship between A. D. Dunn and D. S. Bird was remote and there is no evidence of close and intimate friendship between them or of more than two or three transactions which they ever had between them. The relationship between D. S. Bird and James Bird, and that between James Bird and A. D. Dunn, are entirely immaterial to the issue. There is no evidence that Miss Grace Waters had ever had any dealings whatever with A. D. Dunn prior to this transaction. The rule in Tennessee is that relationship of parties to a conveyance is not of itself a badge of fraud, but a fact which naturally awakens suspicion and lends greater weight to other unfavorable circumstances, and renders necessary fuller and more distinct proof of the consideration and fairness of the transaction. Robinson v. Frankel, 85 Tenn., 475, 3 S. W., 652; Bank v. Thornton, (Ch. Apps.), 35 S. W., 565. The appellees have very well shown that none of these relationships entered into their transaction with A. D. Dunn, although of course it may be inferred that the relationship between Dunn and D. S. Bird might have more readily caused them to enter into consideration of the deal.

8. No apparent use for the property.

It is insisted that because neither of the appellees had any apparent use for the property a burden is imposed upon them, taken with other circumstances, to show freedom from any fraudulent

participation. We are unable to assent to this proposition. The appellees testified very clearly that their use for the property was for re-sale at a profit. It would be utterly unreasonable to hold that because a person buys a piece of real estate which he does not intend directly to use, he has some sinister motive in buying it. Such a proposition would cast a cloud upon the good faith of myriads of men trading every day in real estate for purposes of profit.

9. Failure to produce evidence.

It is true that prior to the first hearing of this cause the appellees did not offer to testify; but upon the face of this record it is reasonable to conclude that they and their counsel thought that the sole ground of fraud relied upon was inadequacy of consideration. They introduced a number of witnesses who testified that the value of the property was in the neighborhood of what they agreed to pay for it. It is true that they thought that they might be able to sell it for $10,000. However, these defendants were, as we have held, properly allowed to testify upon the reopening of the case, and we do not infer from their testimony that they were seeking to conceal any facts or sinister motives. If they had not testified we would be very much inclined to agree with the Chancellor, as announced upon his first hearing, that their failure to testify to the facts within their knowledge should be held against them and treated as a badge of fraud. But this question is out of the way in view of the permission given to the appellees to testify and in view of the nature of their testimony.

We agree with the Chancellor that some circumstances were shown naturally arousing suspicion, but that these have been fairly well explained consistently with the innocence of the appellees; and the evidence is not sufficient to justify a finding of knowledge of fraudulent intent of the grantor and a conscious participation in the effort to carry it out. It would be unjust to deprive these appellees of the money which they have expended, and the Chancellor was not in error in decreeing that the property should stand as security, subject to the prior encumbrance, for their reimbursement. In Hartfield v. Simmons, supra, it appeared that a conveyance was made in which two land warrants worth from $160 to $200 were given in payment for a tract of land which was worth from $1500 to $2000. The sale was made by a son to his mother. The court held that the gross inadequacy of price, together with the other circumstances did not show actual fraud but fraud in law; that the land would stand as security for the money actually paid; that the mother would not have to forfeit her money or land warrants paid for the property just because the conveyance was made under suspicious circumstances. This was the rule in Alley v. Connell, supra, and in that case the court went so far as to re-

mand the cause for further proof to enable the grantee to establish an account which she held against the grantor, the satisfaction of which was part of the consideration for the deed.

The record does not actually sustain the finding of the Chancellor that the decree in the Cochran suit was filed for entry at the time the deed of Dunn to the appellees was executed but in the view which we take of this case this was harmless error. We think that the Chancellor has reached the correct result and his decree is affirmed. The costs of the appeal will be adjudged against the appellant and the surety on its appeal bond. If desired the cause will be remanded to the chancery court of Blount county for further proceedings which may be necessary.

Faw, P. J., and Crownover, J., concur.