**William M. KINCAID, et al.**

v.

**SOUTHTRUST BANK, et al.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 25, 2006 Session.

Oct. 31, 2006.

Permission to Appeal Denied by Supreme Court Feb. 26, 2007.

**34**

John L. Miller and Martin B. Bailey, Nashville, Tennessee; and Kenneth J. Catanzarite, Anaheim, California, for the appellants, William M. Kincaid, individually; Storage Florida, LP; and Aegis Self Storage, LLC, f/k/a Derby Self Storage, LLC.

Courtney H. Gilmer, Nashville, Tennessee, for the appellee, PNL Storage, LLC.

Charles W. McElroy and Dudley M. West, Nashville, Tennessee, for the appellee, Wachovia Bank, National Association, successor by merger to SouthTrust Bank; and SC Realty, LLC.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Plaintiffs appeal the dismissal of their eleven-count complaint against SouthTrust Bank and two other nominal defendants. The trial court dismissed the complaint, finding the plaintiffs had failed to state a claim upon which relief can be granted. The plaintiffs contend the bank's dealings with Ed H. Street, Jr., the chief manager of Derby Self Storage LLC, following Derby's default on a secured indebtedness to the bank, constituted a conspiracy to breach fiduciary duty, a conspiracy to commit constructive fraud and actual fraud. The complaints relate to the fact that Ed Street was relieved of his personal guarantee of Derby's indebtedness when he executed on behalf of Derby a deed in lieu of foreclosure. Finding no error, we affirm.

The plaintiffs are William M. Kincaid, Storage Florida, LP, and Aegis Self Storage, LP.[1] The principal defendant is SouthTrust Bank, N.A.[2] There are two other nominal defendants. One is SC Realty, a limited liability company owned and controlled by SouthTrust. The other defendant is PNL Storage, LLC, an unrelated entity that subsequently purchased the real estate at issue.

In their Complaint, Plaintiffs assert a variety of claims against Defendants, most of which pertain to SouthTrust and its affiliate, SC Realty. The principal claims are conspiracy to breach fiduciary duty, conspiracy to commit constructive fraud, and fraud. In a nutshell, the principal plaintiff, William Kincaid, contends that but for SouthTrust obtaining a deed in lieu of foreclosure of the only asset of Derby Self Storage, LLC, he could have salvaged Derby and its assets through a bankruptcy

---

1. At the time of the loan transaction, the borrowing entity was Derby Self Storage, LLC, which was also known as and/or was referred to as "Storage Nashville." In the Complaint, Plaintiffs identify Derby Self Storage, LLC as "Storage Nashville." The name of Derby Self Storage, LLC was changed to Aegis Self Storage, LLC, after Kincaid ac-

quired a controlling interest in Derby in 2004 as part of a settlement agreement between Kincaid and Street.

2. SouthTrust Bank, N.A., by virtue of a merger, is now Wachovia Bank, National Association. For the purposes of this appeal, however, we will refer to Appellant as SouthTrust.

reorganization. Derby is the predecessor entity to one of the plaintiffs, Aegis Self Storage, LLC.

### The Loan, Default and Deed in Lieu of Foreclosure

The matters at issue arose out of a default on a secured indebtedness owed to SouthTrust Bank by Derby Self Storage, LLC. The purpose of the loan was to enable Derby to construct a storage facility in Nashville, Tennessee. As collateral for the loan, SouthTrust perfected a security interest in Derby's real property. As additional collateral, the bank obtained guarantees of Derby's obligations from the principal officer and owner of Derby, Ed H. Street, Jr. At all times material to this action, Ed Street was the principal officer of Derby, serving as its chief manager. The bank also obtained guarantees from Street's wife and other related entities.[3]

Shortly after the Storage Nashville facility was built, Derby and Street experienced financial problems. When Derby defaulted on the indebtedness owed to SouthTrust, SouthTrust requested and received revised financial statements from Street and Street's wife. The revised financial statements showed a significant negative net worth, which was a dramatic difference from the net worth Street and his wife had reported in order to obtain the loan.[4]

When it became apparent to SouthTrust that Derby was insolvent and that Street and his wife were unable to cure the default on Derby's indebtedness to the bank, SouthTrust advised Street that it would accept from Derby a Deed in Lieu of Foreclosure and release the guarantees. On October 5, 2001, Street executed a Deed in Lieu of Foreclosure on behalf of Derby, thereby conveying to SouthTrust all of Derby's interest in the secured property. Thereafter, SouthTrust assigned the real property to SC Realty, which sold the property to PNL Storage, LLC. PNL is the current owner of the property at issue. PNL is a defendant in this action solely because it is the owner of the real property at issue.

### KINCAID'S INTEREST IN DERBY

The principal plaintiff, William Kincaid, was not an owner, partner, member, or officer of Derby when SouthTrust made the loan to Derby, when Derby defaulted, or when Street executed the Deed in Lieu of Foreclosure. Kincaid did not acquire a legal interest in Derby until 2004, when Kincaid and Street entered into an agreement to resolve certain financial disputes between them.

The settlement agreement between Kincaid and Street was the culmination of a long and, for Kincaid, costly relationship that began in 1997, when Kincaid loaned $750,000 to Keystone Farms, LP and Storage Florida, both of which were owned by Street.[5] That relationship went sour in

---

3. The guarantors included Realty Shop, Inc.; Main Street Realty, LLC; Edward H. Street Childrens' Trust I; and Edward H. Street Childrens' Trust II.

4. The Streets' financial condition changed markedly from March 15, 1999, when their reported net worth was $5.3 million, to September of 2001 when he mailed partial affidavits to the bank, along with financial statements, showed a negative net worth of minus $532,000.

5. In 1997 Kincaid invested $350,000 in Keystone Farms, LP in the form of a personal unsecured loan to earn interest at 12% annum and a 20% limited partnership interest. In 1998 Kincaid invested an additional $400,000 in Storage Florida in the form of a personal unsecured loan to earn interest at 10% annum and a 10% limited partnership interest.

June of 2001, when Street advised Kincaid there were no funds available to repay the loans on the two projects. Street represented that the Storage Florida project failed to bring in the level of rents and occupancy forecasted, and the Keystone project was the victim of an alleged government conspiracy against Street to cover up their own neglect in releasing funds to the contractor before the project was complete.[6]

In an effort to recover his $750,000 loans, Kincaid undertook an evaluation of Street's investments. The evaluation included on site inspections and numerical analysis of facility specific and market rents for three of Street's storage facilities, Storage Florida, Storage Nashville, and Storage Kentucky, each of which conducted business under the trade name "Derby Storage." Kincaid concluded the value of the real property, if combined with a significant infusion of additional capital, would be sufficient to reorganize the three entities in bankruptcy court. As a consequence, Kincaid recommended the strategy to Street and offered to pay the necessary legal fees for bankruptcy and to infuse additional capital.

During the same time frame, Street was providing information to the bank about the collapse of his financial empire and informing the bank that he did not have the financial means to cure the default. Subsequently, SouthTrust offered to accept from Derby a Deed in Lieu of Foreclosure of its Deed of Trust and release the guarantees. Street agreed and executed the Deed In Lieu of Foreclosure on behalf of Derby. Thereafter, the bank released Street, his wife and related entities from the guarantees.

*The Procedural History*

Subsequently, Kincaid filed an action in the United States District Court for the Eastern District of Tennessee wherein he asserted claims substantially similar to those asserted herein and, in addition thereto, a RICO claim. *See William M. Kincaid, et al. v. Storage Florida, L.P., et al.,* Case No. 2:03–CV–09. After that action was dismissed, Plaintiffs commenced this action.

In this action, Plaintiffs set forth eleven separate claims for relief. They include: 1) conspiracy to breach fiduciary duty; 2) conspiracy to commit constructive fraud; 3) fraud; 4) negligent misrepresentation; 5) cancellation of instruments; 6) accounting for rents and profits; 7) injunctive relief; 8) appointment of a receiver; 9) imposition of constructive or resulting trust; 10) conversion; and 11) unjust enrichment.

Two of the defendants, SouthTrust and SC Realty, challenged the sufficiency of the Complaint by filing a Motion to Dismiss for both failure to state a claim upon which relief can be granted pursuant to Tenn. R. Civ. P. 12.02(6) and failure to state the allegations of fraud with particularity pursuant to Tenn. R. Civ. P. 9.02. The third defendant, PNL Storage, LLC, filed a separate Motion to Dismiss for failure to state a claim pursuant to Tenn. R. Civ. P. 12.02(6). The motions came on for hearing on November 19, 2004. During the hearing on Defendants' motions to dismiss, Plaintiffs made an oral motion to amend the Complaint. The trial court ruled on the various motions from the bench. It denied Plaintiffs' oral motion to

---

**6.** In late 2000, Kincaid learned that the Keystone investment petitioned for bankruptcy protection in September 2000 amid allegations by the United States Department of Housing and Urban Development of skimming by Street for taking funds from Keystone and applying the funds to purposes not allowed by the loan documents.

amend and granted Defendants' motions, dismissing all claims.

Plaintiffs raise two issues on appeal. One, they contend the trial court erred in granting Defendants' Motions to Dismiss. Two, they contend the trial court erred in denying Plaintiffs' Motion to Alter or Amend.

### STANDARD OF REVIEW

The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. A Rule 12 motion only challenges the legal sufficiency of the complaint. It does not challenge the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn.1999). In reviewing a motion to dismiss, we must liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn.1996); *see also Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696–97 (Tenn.2002). Thus, a complaint should not be dismissed for failure to state a claim *unless* it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. (emphasis added) *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn.1978). Making such a determination is a question of law. Our review of a trial court's determinations on issues of law is *de novo*, with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 713 (Tenn.2002); *Bowden v. Ward*, 27

S.W.3d 913, 916 (Tenn.2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

### RULE 12 MOTION

Of the eleven claims asserted in the Complaint, we have concluded that the viability, or lack thereof, of three of the claims are dispositive of the issues presented. The three dispositive claims are conspiracy to breach a fiduciary duty, conspiracy to commit constructive fraud, and a claim of fraud. Each of the three claims pertain to the acts or omissions of South-Trust relative to its dealings with Ed Street and Derby. The consequence of the dealings was that Derby conveyed a Deed in Lieu of Foreclosure to the bank for all of its interests in the real property owned by Derby, and the bank released Street and his compatriots of their guarantees. In a nutshell, Plaintiffs contend they sustained damages, principally the loss of Kincaid's $750,000 investment in Keystone and Storage Florida and the opportunity to reorganize Derby.

### *COUNT I—CONSPIRACY TO BREACH FIDUCIARY DUTY*

■ Plaintiffs' first claim for relief against SouthTrust and SC Reality is conspiracy to breach fiduciary duty.[7] It is important to note that Plaintiffs do not contend that SouthTrust or SC Realty owed them a fiduciary duty; instead, the fiduciary duty at issue was owed by Ed Street to Derby Self Storage, LLC (now Aegis Self Storage, LLC), who was Derby's Chief Manager at all times material to this action.

---

7. Plaintiffs do not allege that SouthTrust owed any independent fiduciary duty to them. They claim that SouthTrust conspired to induce Street to breach *his* fiduciary duty to Plaintiffs. Thus, we need not analyze whether SouthTrust breached any independent fiduciary duty to Plaintiffs.

The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Morgan v. Brush Wellman, Inc.,* 165 F.Supp.2d 704, 720 (E.D.Tenn.2001). Conspiracy claims must be pled with some degree of specificity. *McGee v. Best,* 106 S.W.3d 48, 64 (Tenn.Ct.App.2002) (citing *Haynes v. Harris,* No. 01A01–9810–CV–00518, 1999 WL 317946, at *2 (Tenn.Ct. App.1999)) (citations omitted). Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim. *Id.*

The facts upon which Plaintiffs rely to support the eleven claims asserted in the Complaint are stated in paragraphs 1 through 87 of the Complaint. Thereafter, each claim is stated in summary fashion. Plaintiffs state their first claim, the claim of conspiracy to breach fiduciary duty against SouthTrust and SC Realty in paragraphs 88 through 95. After incorporating by reference paragraphs 1 through 87, Plaintiffs allege *inter alia:*

> 89. As the Chief Manager of STOR-AGE NASHVILLE and the general partner of STORAGE FLORIDA, MAIN STREET and MR. STREET, owed a fiduciary duty to the company and partnership and members/limited partners specifically KINCAID. In addition MAIN STREET owed a fiduciary duty to KINCAID and STORAGE FLORIDA to protect his/its interests.
> . . .
> 92. As above alleged the Defendants conspired to breach the fiduciary duty of the Chief Manager and general partner to the company, partnership and limited partners by among other things conspiring to secure a solely personal advan-

tage in the release of personal liability of the guarantors as to MR. STREET, MS. STREET, MAIN STREET, REALTY SHOP, STREET CHILDRENS' TRUST, EPSTEIN, FIRST REALTY and EPSTEIN TRUST (the "Released Entities"). The Released Entities in conjunction with the STREET ENTI-TIES and the EPSTEIN ENTITIES were motivated to participate because notwithstanding claims of no assets each had secreted assets that they sought to protect.

> 93. SOUTHTRUST and its alter ego SC REALTY were also motivated to make the offer of such a release and to thereby solicit the breach because they knew that they could then eliminate the bankruptcy reorganization effort of STORAGE NASHVILLE, KINCAID and STORAGE FLORIDA, eliminate MR. STREET from the institution and secure the valuable PROPERTY for it-self.

The Complaint further states that, as a direct and proximate result and consequence of the above breach of the above-described fiduciary duties and conspiracy, Plaintiffs suffered damages in excess of $750,000.

The Complaint states that the purpose SouthTrust intended to accomplish was to obtain a Deed in Lieu of Foreclosure to obtain title to the real property secured by the indebtedness. SouthTrust had a properly perfected secured interest on an indebtedness that was admittedly in default. "The rights of a secured party to enforce its security interest in collateral after the debtor's default are an important feature of a secured transaction." Tenn.Code Ann. § 47–9–601, cmt. 2. Because of the default, SouthTrust had the right to foreclose on the property. *See* Tenn.Code Ann. § 47–9–601 *et seq.* Alternatively, SouthTrust had the right to accept a deed

in lieu of foreclosure. *See Budensiek v. Williams,* C.A. No. 1168, 1988 WL 102774, at *3 (Tenn.Ct.App. Oct.6, 1988).

■ An essential element of a conspiracy claim is that the conspiring parties intend to accomplish an unlawful purpose, or a lawful purpose by unlawful means. *Morgan,* 165 F.Supp.2d at 720. As the Complaint alleges, due to Derby's default, SouthTrust's purpose was to foreclose on the property or obtain a deed in lieu of foreclosure, either of which would be a lawful purpose. *See* Tenn.Code Ann. § 47–9–601, UCC cmt. 2; *see also Budensiek,* 1988 WL 102774, at *3. Therefore, we find the purpose was not unlawful.

That leaves us with the alternative essential element of a conspiracy, whether SouthTrust accomplished a lawful purpose by unlawful means. Having examined the factual allegations in the Complaint as they pertain to the actions of SouthTrust, we have concluded that the Complaint fails to state a claim that SouthTrust employed unlawful means to accomplish a lawful purpose. The Complaint alleges that South-Trust offered to release and did, in fact, release the guarantees on the indebtedness in exchange for a deed in lieu of foreclosure. There is nothing unlawful about a secured creditor releasing guarantees on an indebtedness in exchange for a deed in lieu of foreclosure to recover the secured property, a fact Plaintiffs have acknowledged in their brief. Therefore, not only was the purpose lawful but the means employed to accomplish the purpose were lawful as well.

Having failed to establish an essential element of a claim for conspiracy, Count I cannot survive a motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6).

### COUNT II—CONSPIRACY TO COMMIT CONSTRUCTIVE FRAUD

■ Plaintiffs' second claim alleges a conspiracy to commit constructive fraud.[8] Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Cornwell v. Hodge,* C.A. No. 44, 1986 WL 5890, at *3 (Tenn.Ct.App. May 23, 1986) (citing *Bank of Blount County v. Dunn,* 10 Tenn.App. 95 (1929)). Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals. *Cornwell,* 1986 WL 5890, at *3 (citing *Maxwell v. Land Developers, Inc.,* 485 S.W.2d 869 (Tenn.Ct.App.1972)). They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others. *Cornwell,* 1986 WL 5890, at *3 (citing *Parks v. Alexander,* 608 S.W.2d 881 (Tenn.Ct.App.1980)).

■ Constructive fraud is essentially fraud without the element of intent. Neither actual dishonesty of purpose nor in-

---

8. Although Tennessee has not addressed this issue, some states have held that conspiracy to commit constructive fraud is a legal impossibility because one cannot conspire to commit a crime for which he does not have the intent to commit. *See Witcher v. Reid,* No. CH05–1974, 2006 WL 1494675, at *4 (Va. Cir. Ct. May 31, 2006); *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996); *Unkel v. Liggett Group Inc.,* 172 F.R.D. 474 (M.D.Fla.1997). Conspiracy requires an element of intent to form a common design between two or more people and accomplish, through concerted action, an unlawful act or lawful act by unlawful means. Constructive fraud, on the other hand, is essentially fraud without the element of intent. *Cornwell v. Hodge,* C.A. No. 44, 1986 WL 5890, at *3 (Tenn.Ct.App. May 23, 1986). Finding Plaintiffs' claim deficient for other reasons, we need not make this determination.

tent to deceive is an essential element of constructive fraud. *Cornwell*, 1986 WL 5890, at *3. The presence or absence of such an intent distinguishes actual fraud from constructive fraud. *Id.* Plaintiff's claim, however, is not one of constructive fraud, it is a claim of "conspiracy to commit constructive fraud." As explained earlier, intent is an essential element of a conspiracy claim, thus it is an essential element of this claim. *Morgan*, 165 F.Supp.2d at 720.

Plaintiffs state their claim of conspiracy to commit constructive fraud against SouthTrust and SC Realty in paragraphs 96 through 100. In pertinent part they allege:

> 97. "Each of the Defendants did the acts herein alleged [incorporating by reference paragraphs 1 through 95] with the intent to deceive and defraud [Plaintiffs], and did these acts with the intent to secure a transfer of the PROPERTY and to induce reliance upon KINCAID to negotiate with the Defendants which lulled him and prevented him/it from the reorganization opportunity that was available...."

Plaintiffs also allege that they placed reliance in SouthTrust and SC Realty, and as a result of Defendants' conduct, which "constituted a conspiracy to deprive [Plaintiffs] of valuable rights all for the intent and purpose of advancing personal interests and corporate interests over the interest of [Plaintiffs], [Plaintiffs] have suffered damages...."

██ Although we are required to construe the factual allegations in Plaintiffs' favor, and therefore accept the allegations of fact as true, we are not required to give the same deference to conclusory allegations. *Riggs v. Burson*, 941 S.W.2d 44, 48 (Tenn.1997). Additionally, we are not required to accept as true the inferences to be drawn from conclusory allegations. *Id.*

The Complaint is replete with particular and specific facts regarding the actions of Ed Street, the alleged co-conspirator. The Complaint, however, is lacking in the requisite facts regarding the alleged actions of SouthTrust and/or SC Realty that pertain to the claim of conspiracy to commit constructive fraud. After separating the factual allegations concerning SouthTrust and SC Realty from the conclusory allegations, we find that without the benefit of inferences to be drawn from the companion conclusory allegations, the Complaint fails to state with particularity facts sufficient to establish a legal or equitable duty to Plaintiffs or a breach of a legal or equitable duty. *See McGee v. Best*, 106 S.W.3d 48, 64 (Tenn.Ct.App.1999). Moreover, the factual allegations are insufficient to establish an intent by SouthTrust or SC Realty to deceive Plaintiffs.

Having failed to establish essential elements of a claim for conspiracy to commit constructive fraud, Count II cannot survive a motion to dismiss for failure to state a claim under Tenn. R. Civ. P. 12.02(6).

### COUNT III—FRAUD

██ Plaintiffs' third claim for relief alleges actual fraud against SouthTrust and SC Reality. The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App.1992) (citations omitted).

Plaintiffs state their claim of fraud against SouthTrust and SC Realty in paragraphs 101 through 105. In pertinent part Plaintiffs allege:

102. All and each one of the Defendants did the acts herein alleged with the intent to lull [Plaintiffs] into believing that first the Kincaid investments were a loss due to market conditions or the acts of third parties including HUD and that MR. STREET was not at fault and was himself an innocent victim, who with his family was penniless as a consequence of such misfortune. KINCAID was never shown the books of KEYSTONE or STORAGE FLORIDA because of statements that the entities could not afford either accountants or attorneys.

103. KINCAID placed reliance in the Defendants and MR. STREET until late 2001 when he discovered the true facts concerning the acts as alleged above.

The Complaint goes on to allege that Plaintiffs suffered damages as a result.

As we observed earlier, the first 87 paragraphs of the Complaint are replete with particular and specific facts regarding the actions of Ed Street and his alleged misrepresentations of material facts. The Complaint, however, is grossly lacking with respect to specific material misrepresentations of facts by SouthTrust or SC Realty.

 Allegations of fraud must be plead with particularity. Tenn. R. Civ. P. 9.02; *Strategic Capital Resources, Inc. v. Dylan Tire Industries, LLC,* 102 S.W.3d 603, 611 (Tenn.Ct.App.2002). A claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact. *See Dobbs,* 846 S.W.2d at 274. Plaintiffs allege, "each one of the Defendants did the acts herein alleged with the intent to deceive and defraud ..." and "herein" refers generally to one hundred paragraphs. To pass the particularity test, the actors should be identified and the substance of each allegation should be pled. *Strategic Capital*

*Res., Inc. v. Dylan Tire Indus., LLC,* 102 S.W.3d 603, 611 (Tenn.Ct.App.2002). That was not done here.

Plaintiffs set forth numerous and significant allegations of particular facts alleging intentional misrepresentations of material facts, which are sufficient to support a claim of fraud; however, almost all of them pertain to misrepresentations by Ed Street, not SouthTrust Bank or SC Realty. Because Street was not an agent of either defendant, his acts are not attributable to them. After separating the alleged material misrepresentations attributable to Street, we find the remaining allegations insufficient to sustain a claim of fraud against Defendants.

The Complaint simply fails to identify with particularity facts sufficient to sustain a claim of fraud as it pertains to SouthTrust or SC Realty.

### OTHER CLAIMS DISMISSED

Plaintiffs asserted several other claims that were also dismissed by the trial court. We have determined the issues presented regarding those claims are without merit, for which no additional discussion is necessary, and that the claims were properly dismissed.

### MOTION TO AMEND

 Plaintiffs made an oral Motion to Amend the Complaint during the hearing on Defendants' Motions to Dismiss. The trial court denied Plaintiffs' Motion to Amend. Plaintiffs contend the trial court erred by denying the Motion to Amend the Complaint. Plaintiffs provide little to support the contention that the trial court erred by denying the proposed amendment to the Complaint other than to rely on Rule 15 which states that a motion to amend should be freely given. We find the contention without merit.

Rule 15.01 of the Tennessee Rules of Civil Procedure provides that, after a responsive pleading is served, a party may amend its complaint only by written consent of the adverse party or by leave of court. The rule also states that leave shall be freely given when justice so requires. Our standard of review for this issue is an abuse of discretion standard. Thus, the trial court has the discretion whether to grant or deny the motion to amend, and this court will reverse the decision only for an abuse of discretion. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn.App. 1979). "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

There are several considerations a trial court should evaluate when determining whether to grant or deny a motion to amend a complaint. Among these factors are: 1) undue delay in filing, 2) lack of notice to the opposing party, 3) bad faith by the moving party, 4) repeated failure to cure deficiencies by previous amendments, 5) undue prejudice to the opposing party, and 6) futility of amendment. *Hall v. Shelby County Retirement Bd.*, 922 S.W.2d 543, 546 (Tenn.Ct.App. 1995); *Merriman*, 599 S.W.2d at 559. When a motion to amend is denied, the trial court should "give a reasoned explanation for its action." *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. 1993).

The trial court addressed the motion to amend in its order, stating:

> As to the oral motion for leave to amend the complaint made by Plaintiffs' counsel at the conclusion of the hearing, the court has considered the arguments of the Defendants that the Plaintiffs have had sufficient time to amend prior to the hearing and that substantially the same allegations in the present complaint were alleged in the previously-dismissed Federal lawsuit, and finds that the Plaintiffs could not allege any set of facts which would entitle them to relief, even if they were allowed additional time to amend, and therefore, denies Plaintiffs' oral motion.

We find two significant deficiencies with Plaintiffs' position. One, the proposed amendment to the Complaint is not included in the record. Thus, we cannot make an independent determination of the merits of the proposed pleading. Two, other than the reliance on the predisposition to granting leave to amend, the record fails to provide any indication that the trial court's decision was against logic or reasoning that caused an injustice to the complaining party. *See Eldridge*, 42 S.W.3d at 85. Accordingly, we find no error with the denial of the Motion to Amend the Complaint.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against appellants, William M. Kincaid, Storage Florida, LP and Aegis Self Storage, LLC.