# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 27, 2010 Session

## INTERNATIONAL MARKET AND RESTAURANT, INC. ET AL. v. BELMONT UNIVERSITY ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 09C-1280     Amanda Jane McClendon, Judge**

---

**No. M2010-00005-COA-R3-CV - Filed November 9, 2010**

---

International Market and Restaurant, Inc. and Patti Myint, owner of the P.M. Café, sued the Belmont University and the Metropolitan Government because representatives of Belmont and the United States Secret Service informed the plaintiffs that the streets and sidewalks around plaintiffs' establishments would be closed for security purposes the evening of the Presidential debate at Belmont pursuant to a plan developed by the Secret Service.  The plaintiffs closed the businesses that evening; however, the sidewalks were not closed.  The plaintiffs claim that they lost revenue by closing and seek compensation based on negligent representation, constructive fraud and breach of the indemnity agreement between Belmont and Metro.  The trial court granted Belmont's motion for summary judgment and Metro's motion to dismiss.  Plaintiffs appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Joseph Howell Johnston, Nashville, Tennessee, for the appellants, International Market and Restaurant, Inc. and Patti K. Myint, d/b/a P.M. Cafe.

Charles Ingram Malone and Lauren Brittain Patten, Nashville, Tennessee, for the appellee, Belmont University.

Cynthia Ellen Gross, James Earl Robinson, and Philip Daniel Baltz, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

Belmont University ("Belmont") entered into a "2008 Debate Host Agreement" with the Commission on Presidential Debates. The Host Agreement allowed Belmont, for a fee, to host the Presidential debate to be held on October 7, 2008. As part of the Host Agreement, Belmont agreed to provide complete city services to ensure the safety of the debate, in coordination with the United States Secret Service. In order to provide city services, including the restriction of public access to certain streets and sidewalks around the University, Belmont applied for a Special Events Permit from the Metropolitan Government of Nashville and Davidson County ("Metro"). The application contained information about proposed street and sidewalk closures.[1] The United States Secret Service decided which streets and sidewalks should be closed and provided the plan to Belmont. The application was eventually granted. Belmont also executed an indemnification and hold harmless agreement with Metro regarding the special event.

In an effort to keep its neighbors apprised,[2] representatives of Belmont and the Secret Service visited local businesses, including the International Market and P. M. Café, to inform them of the street and sidewalk closure plan. In particular, Belmont Director of Campus Security Terry White and Special Agent Daniel Brookhuizen spoke with Ms. Patti K. Myint, owner of the International Market and Restaurant, Inc. ("International Market") and the P. M. Café.[3] The planned closures limited customer access to both establishments[4] after 6:00 p.m. on October 7, 2008. Therefore, Ms. Myint decided to close both establishments that evening.

---

[1] Dr. Jason Rogers, the general counsel and vice president of Belmont, testified that:

> We received instructions from the Secret Service as to which streets and side walks they wanted to have a permit to close. And as the owner of the property we were informed by the mayor's office that we were the appropriate party to file the permit application which we did. And we filed the paperwork, secured the permit and then left it up to the Secret Service and the Metro police to do their jobs as regards security.

[2] Marilyn Edwards, the director of special events for the mayor's office of economic and community development, testified that Metro "require[s] all event planners to be in contact with anybody that's going to be potentially negatively impacted by an event so that they can make plans to deal with it."

[3] The complaint states that Ms. Myint owns both establishments. Her testimony was that the International Market is a family-owned corporation. Ms. Myint manages the corporation and operates the restaurant. The P. M. Café is a sole proprietorship owned by Ms. Myint and her son Arnold Myint.

[4] Customers could access the International Market from an alley by going through the kitchen, but Ms. Myint indicated that such access was prohibited by public health regulations. The rear entrance to the P.M. Café does not go through the kitchen.

Letters were written to Belmont on behalf of both establishments seeking compensation for anticipated lost revenue due to the closure of the International Market and the P. M. Café. Belmont declined to provide any such payments.

On the night of the Presidential debate, the sidewalks giving pedestrians access to the International Market and the P. M. Café were not closed to pedestrian traffic. Consequently, both establishments could have been open. Closing cost the businesses revenue.

International Market and Ms. Myint sued Belmont in Davidson County General Sessions Court. Their case was dismissed and they appealed to circuit court. They amended their complaint to add Metro as a nominal party to assert a claim as third-party beneficiaries to the Indemnification and Hold Harmless Agreement between Belmont and Metro. The plaintiffs asserted claims for negligent misrepresentation, constructive fraud and breach of contract.

Belmont filed a motion for summary judgment, and Metro filed a motion to dismiss. The trial court found that there were no issues of material fact and that Belmont was entitled to judgment as a matter of law. Metro's motion to dismiss was also granted. The plaintiffs appealed.

STANDARD OF REVIEW

In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). We must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id*.; *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). If there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd*, 847 S.W.2d at 211; *EVCO Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, a moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial."*Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

We are also asked to examine whether the trial court erred in granting Metro's motion to dismiss. The purpose of a Rule 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint, not the strength of the complainant's proof. *Doe v. Sundquist*, 2 S.W.3d

919, 922 (Tenn. 1999). In reviewing a trial court's ruling on a motion to dismiss based on Rule 12.02(6), we must liberally construe the pleadings, presuming all factual allegations are true and drawing all reasonable inferences in favor of the complainant. *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007); *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 37 (Tenn. Ct. App. 2006). The motion to dismiss should be denied unless it appears that the plaintiffs can prove no set of facts in support of their claim against Metro that would entitle them to relief. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999).

ANALYSIS

Negligent Misrepresentation

To succeed on a claim of negligent misrepresentation, a "plaintiff must establish that '(1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information.'" *Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2001) (quoting *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). Furthermore, Tennessee courts require that the false information consists of statements of a material past or present fact. *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982). Consequently, the tort of negligent misrepresentation cannot be based on statements of opinion or representations of future events. *Id*. This legal requirement is fatal to the plaintiffs' negligent misrepresentation claim because informing the plaintiffs that their streets will be closed is a representation of a future event.[5] The information cannot supply a basis for their negligent misrepresentation claim.

Since the plaintiffs cannot prove their claim as a matter of law, summary judgment on the negligent misrepresentation claim was proper.

Constructive Fraud

_____

[5]Tennessee case law indicates that a misrepresentation about a future event can be the basis of a negligent misrepresentation claim if the misrepresentation about the future event is based on a present fact. *Cummins v. Opryland Prods.*, No. M1998-00934-COA-R3-CV, 2001 WL 219696, at *8 (Tenn. Ct. App. Mar 7, 2001); *Glanton v. Beckley*, No. 01-A-01-9606-CV-00283, 1996 WL 709373, at *9 (Tenn. Ct. App. Dec. 11, 1996) (Koch, J., concurring). It can be argued that the representation about street and sidewalk closures was based on the Secret Service's closure plan at that time. We note, however, that the plan was still being refined and was, in fact, later altered before Metro's approval. So, the plan was not a present fact but a present intention. However, if one viewed the representation as one of present fact, it was not false. At the time the representation was made, closing the streets and sidewalks by the International Market and the P.M. Café was in the plan.

In *Kincaid v. SouthTrust Bank*, 221 S.W.3d at 39-40, this court explained constructive fraud as follows:

> Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. *Cornwell v. Hodge,* C.A. No. 44, 1986 WL 5890, at *3 (Tenn. Ct. App. May 23, 1986) (citing *Bank of Blount County v. Dunn,* 10 Tenn. App. 95 (1929)). Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals. *Cornwell*, 1986 WL 5890, at *3 (citing *Maxwell v. Land Developers, Inc.,* 485 S.W.2d 869 (Tenn. Ct. App. 1972)). They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others. *Cornwell*, 1986 WL 5890, at *3 (citing *Parks v. Alexander,* 608 S.W.2d 881 (Tenn. Ct. App. 1980)).
>
> Constructive fraud is essentially fraud without the element of intent. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Cornwell,* 1986 WL 5890, at *3.

The plaintiffs' description of the duty allegedly breached by Belmont is somewhat fluid. At one point, the plaintiffs' brief argues:

> Belmont had an equitable, if not legal, duty to provide accurate and timely information to Plaintiff as soon as it became aware that the planned closures of sidewalks serving the International Market and the P. M. Café on Belmont Boulevard after 6:00 p.m. on October 7, 2008, for the Presidential Debate would require them to close and result in a loss of revenue and also to communicate this information to the Secret Service.

The record reflects that a representative of Belmont, along with a member of the Secret Service, did inform the plaintiffs of the planned street and sidewalk closures. Ms. Myint told them that the closures would prevent access to her establishments. Belmont's duty, if there was one, was met.

At another point, the plaintiffs' brief maintains that, "Belmont had at least an equitable duty, if not a legal duty, to prevent the occurrence of property damage arising out of its closure of streets and sidewalks serving Plaintiffs' restaurants on Belmont Boulevard and Bernard Avenue." They discern Belmont's equitable duty from Metro's requirement that Belmont have general liability insurance, from the Indemnification and Hold Harmless

Agreement between Belmont and Metro (in which Belmont agreed "to assume the risk of any and all defects or other conditions" and to hold Metro harmless "from any and all claims, including . . . property damage"). They also believe that Belmont's duty to confer with the Secret Service under the Host Agreement creates or supports the duty.

We do not find any legal or equitable duty owed by Belmont to the plaintiffs. In the Host Agreement, Belmont agreed to work with the Secret Service and Metro to ensure the safety of the Presidential candidates and the debate audience. Mainly, this involved Belmont serving as a go-between. So, as for the streets and sidewalks, Belmont received instructions from the Secret Service regarding the closures and communicated those requirements to Metro via the special event application process. While Belmont did agree to hold Metro harmless, there is no claim of physical damage to any of the plaintiffs' property caused by Metro. The lack of any duty to the plaintiffs forecloses any viable claim for economic damages.

Since the plaintiffs cannot show a duty, they cannot prove their claim as a matter of law. Summary judgment on the constructive fraud claim was proper.

Breach of Contract

The plaintiffs claim to be third-party beneficiaries of Belmont's Indemnification and Hold Harmless Agreement with Metro. "The ordinary usage of indemnify as defined by Webster is 'to secure against hurt, loss or damage-to make compensation to for incurred hurt, loss or damage.'" *Cunningham v. Metro. Gov't of Nashville & Davidson County*, 476 S.W.2d 641, 643 (Tenn. 1972). "'Hold harmless' means to fully compensate the indemnitee for all loss or expense."[6] *Pinney v. Tarpley*, 686 S.W.2d 574, 579 (Tenn. Ct. App. 1984).

The plain language of the Indemnification and Hold Harmless Agreement provides that Metro assumes no liability it did not already have[7] and that Belmont will reimburse

---

[6]The Indemnification and Hold Harmless Agreement states: "This indemnification and hold harmless includes, but is not limited to, the payment of all attorney fees, expenses, costs, judgment and other expenses which may be incurred by METRO, its officers, agents, or employees as a result of any and all such claims."

[7]This portion of the agreement states:

The SPECIAL EVENTS APPLICANT agrees that the Metropolitan Government of Nashville and Davidson County assumes NO responsibility or liability for any defects or other conditions of the SITE(s), whether the conditions are known or unknown to either party, and/or discoverable by either party. The SPECIAL EVENTS APPLICANT agrees

(continued...)

Metro for any losses or expenses it may incur for claims against Metro arising from its actions taken pursuant to the special event permit.[8] The agreement is not for the benefit of any third parties. It is strictly for the mutual benefit of Metro, in the sense that it gave Metro a source of reimbursement if Metro was found liable for any damages, and Belmont, since the agreement was a requirement for receiving the special event permit. The agreement confers no rights on third parties – it only determines who bears the ultimate monetary responsibility between Metro and Belmont if Metro is found liable for some damage. In order to make a citizen a third-party beneficiary to a government contract, the contract must "manifest[] a specific intent to grant individual citizens enforceable rights thereunder." *Coburn v. City of Dyersburg*, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989). The Indemnification and Hold Harmless Agreement manifests no such intent. Plaintiffs cannot show that they were intended beneficiaries of the agreement. Ergo, they cannot sue for its breach.[9]

Since the plaintiffs cannot prove their claim as a matter of law, summary judgment on the breach of contract claim was proper.

Metro

The plaintiffs' brief states that "Defendant Metro Government is a nominal party to this action only because it is a party to the contract being sued upon by Plaintiffs as third-party beneficiaries." Since we have determined that the plaintiffs are not third-party beneficiaries of the Indemnification and Hold Harmless Agreement, no grounds exist for suing Metro. The trial court's grant of Metro's motion to dismiss is affirmed.

---

[7](...continued)
to assume the risk for any and all defects and/or other conditions, whether these defects or other conditions are dangerous and/or whether these defects or other conditions are discoverable by either party, and/or known or unknown to either party.

[8]*See infra* note 6.

[9]We need not reach the issue of whether the agreement was breached.

CONCLUSION

The trial court is affirmed. Costs of appeal are assessed one-half against each of the appellants, for which execution may issue if necessary.

_____

ANDY D. BENNETT, JUDGE