IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2020

**MOUNT HOPEWELL MISSIONARY BAPTIST CHURCH v.
FOUNDATION CAPITAL RESOURCES, INC.**

**Appeal from the Chancery Court for Davidson County
No. 19-1103-III      Ellen Hobbs Lyle, Chancellor**

_____

**No. M2020-00107-COA-R3-CV**
_____

A church filed a complaint in 2019 against a lending institution asserting causes of action for fraud and breach of contract based on conduct that occurred in 2008 and 2009. An earlier complaint the church filed in 2009 was dismissed in 2017 for failure to prosecute, and the church voluntarily dismissed a second complaint it filed in 2018. The lending institution moved to dismiss the 2019 complaint based on the running of the statute of limitations. The trial court granted the motion to dismiss, and the church appeals. We affirm the trial court's judgment dismissing the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE, and KRISTI M. DAVIS, JJ., joined.

Isaac T. Conner and Andre Philip Johnson, Nashville, Tennessee, for the appellant, Mount Hopewell Missionary Baptist Church.

Sye Thomas Hickey, Nashville, Tennessee, for the appellee, Foundation Capital Resources, Inc.

**OPINION**

I. PROCEDURAL BACKGROUND

Mount Hopewell Missionary Baptist Church ("Mount Hopewell") filed a complaint against Foundation Capital Resources, Inc. ("FCR") in September 2019 asserting claims of fraud and breach of contract based on FCR's foreclosure on Mount Hopewell's property in November 2008. Mount Hopewell had filed earlier complaints against FCR in 2009 and again in 2018 based on the same set of facts. In the complaint filed in 2009, Mount

Hopewell asserted wrongful foreclosure and negligence. The trial court dismissed that case without prejudice on February 16, 2017, based on Mount Hopewell's failure to prosecute. In reliance on the savings statute, Tenn. Code Ann. § 28-1-105, Mount Hopewell refiled its complaint on February 16, 2018, and asserted claims for breach of contract and fraud. Mount Hopewell nonsuited its 2018 complaint several months later pursuant to Tenn. R. Civ. P. 41.01, and the trial court entered an order acknowledging the voluntary dismissal on September 13, 2018.

Mount Hopewell filed the instant complaint on September 12, 2019, asserting the same causes of action that it did in its 2018 complaint. FCR moved to dismiss the 2019 complaint, arguing that Mount Hopewell's claims for fraud and breach of contract were based on events that occurred in 2008 and were barred by the applicable statutes of limitation. FCR also contended that the 2019 complaint did not come within the savings statute because it was not filed within one year of the dismissal of the first lawsuit, which was dismissed without prejudice in 2017.

The trial court granted FCR's motion to dismiss by order filed on December 19, 2019. The court acknowledged that the dismissal of Mount Hopewell's first lawsuit triggered the savings statute, Tenn. Code Ann. § 28-1-105, which permitted Mount Hopewell to re-file its complaint against FCR within one year of the date when its initial complaint was dismissed, February 16, 2017. The trial court found, however, that when Mount Hopewell nonsuited its 2018 lawsuit in September 2018, the dismissal "operated as a dismissal on the merits" because it occurred more than a year after the dismissal of the initial lawsuit. The court also held that Mount Hopewell's claims for breach of contract and fraud were barred by the applicable statutes of limitation. Lastly, the court found that Mount Hopewell's factual allegations were insufficient to state an actionable claim for fraud. The court wrote, in part:

> Specifically, the facts as pleaded by Plaintiff do not satisfy the essential requirements that (1) FCR made a representation of a present or past material fact and (2) FCR concealed or suppressed a material fact because the allegations in paragraph 62 and subsequent paragraphs (including without limitation the reference to Exhibit H to the Complaint) do not allege past and existing facts. The Court finds that Plaintiff's allegations regarding Exhibit H to the Complaint and what went on with FCR's board of directors do not fit within the requirements for intentional misrepresentation or misrepresentation by concealment under Tennessee law.

Mount Hopewell appeals the trial court's dismissal of its 2019 complaint, arguing that (1) the factual allegations in the 2019 complaint properly addressed each element of fraud and identified FCR's fraudulent misrepresentations, (2) the discovery rule extended the statute of limitations for fraud until December 27, 2016, and (3) the 2018 and 2019 complaints were filed within the three-year statute of limitations applicable to fraud, and

- 2 -

the 2019 lawsuit was filed within a year of the order acknowledging Mount Hopewell's nonsuit of the 2018 lawsuit. FCR asserts that Mount Hopewell's appeal is frivolous and contends that it is entitled to an award of damages pursuant to Tenn. Code Ann. § 27-1-122.

## II. ANALYSIS

### A. Rule 41.01 and Tennessee's Savings Statute

We will first address the interplay between Tenn. R. Civ. P. 41.01, the rule concerning voluntary nonsuits, and Tenn. Code Ann. § 28-1-105, known as the savings statute. Rule 41.01 provides, in pertinent part, as follows:

> (1) Subject to the provisions of . . . any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . . .

> (2) Notwithstanding the provisions of the preceding paragraph, a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has twice dismissed in any court an action based on or including the same claim.

As the rule states, "[s]ubject to the provisions of any statute," a plaintiff is permitted to take a voluntary nonsuit two times with impunity, but the third time a plaintiff voluntarily dismisses an action, the dismissal "operates as an adjudication upon the merits." The savings statute, upon which Mount Hopewell relies, provides the following, in relevant part:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Tenn. Code Ann. § 28-1-105(a).

This court has interpreted the savings statute to allow a plaintiff to refile a complaint regardless of whether the plaintiff voluntary nonsuits the action or whether the case is dismissed by the court without prejudice for failure to prosecute, as occurred here. *See*

*Payne v. Matthews*, 633 S.W.2d 494, 496 (Tenn. Ct. App. 1982). The *Payne* court considered Rule 41.01 in the context of the savings statute to determine whether Rule 41.01 enlarges the one-year time period set forth in the savings statute. The court first addressed the savings statute, writing, "It has long been held that after the taking of any nonsuit to the original action, any additional suits would have to be filed within one year of the first nonsuit to be within the purview of T.C.A. Sec. 28-1-105." *Id.* at 495-96. The court then recognized that "[w]hile Rule 41.01 T.R.C.P. gives a litigant the right to take two voluntary nonsuits, this right is subject to the provisions 'of any statute,' namely T.C.A. 28-1-105." *Id.* at 496. Thus, the *Payne* court concluded, "regardless of how an inconclusive dismissal of an action is had, in order for a suit to survive, it must have been filed within one year of the date of dismissal of the original action[.]" *Id.*; *see also Freeman v. CSX Transp., Inc.*, No. M2010-01833-COA-R9-CV, 2011 WL 1344727, at *7 (Tenn. Ct. App. Apr. 7, 2011) ("[T]he savings statute limits the time within which a plaintiff can refile its case to a single one-year period following the non-merits dismissal of the last case filed within the applicable statute of limitations."); *Lillard v. Pinckley*, No. 01-A-01-9506-CV00268, 1995 WL 656886, at *2 (Tenn. Ct. App. Nov. 9, 1995). The *Freeman* court explained that "[t]he savings statute is limited to actions not resolved on their merits and only applies when an action was originally brought within the statute of limitations." *Freeman*, 2011 WL 1344727, at *11. The 2006 Advisory Commission Comment to Rule 41.01 reinforce this interpretation, stating the following in relevant part:

> Although Rule 41.01(2) allows two nonsuits without prejudice, a plaintiff must carefully consider the *separate* issue of whether the saving statute, T.C.A. § 28-1-105, authorizes a recommencement of the plaintiff's action after a nonsuit. A plaintiff should note that taking a second nonsuit, which is permitted by Rule 41.01(2), does not initiate a second one-year period for recommencing the action under the saving statute.

TENN. R. CIV. P. 41.01 2006 advisory comm'n cmt.

Putting aside for the moment Mount Hopewell's argument that its fraud claim was tolled due to FRC's fraudulent concealment of material facts, we note that the parties agree that Mount Hopewell's breach of contract claim is subject to a six-year of limitation, *see* Tenn. Code Ann. § 28-3-109(a)(3), and that its fraud claim is subject to a three-year statute of limitations, *see* Tenn. Code Ann. § 28-3-105(1); *Hulan v. Coffee Cnty. Bank*, No. M2018-00358-COA-R3-CV, 2019 WL 354870, at *3 (Tenn. Ct. App. Jan. 28, 2019). In the case at bar, Mount Hopewell filed its initial complaint against FRC in 2009, and that complaint was dismissed without prejudice by the trial court on February 16, 2017. Mount Hopewell refiled its complaint against FRC one year later, on February 16, 2018, and then nonsuited those claims against FRC effective September 13, 2018.[1] The savings statute

---

[1]FRC contends that Mount Hopewell's 2018 complaint did not come within the parameters of the savings statute because the causes of action and some of the facts asserted in the 2018 complaint differed from those

- 4 -

extended the time within which Mount Hopewell could refile its complaint against FRC to one year from the date its initial complaint was dismissed, February 16, 2017. Because the 2019 complaint was not filed within this one-year period, it does not enjoy the protections offered by the savings statute. As discussed above, Rule 41.01 gives a plaintiff the right to take two voluntary non-suits, but this rule is subject to the savings statute, and the statute of limitations for Mount Hopewell's breach of contract and fraud claims had run by the time Mount Hopewell filed its 2019 complaint. As a result, Mount Hopewell's nonsuit of its 2018 lawsuit operated as a dismissal on the merits of any breach of contract or fraud claims it had against FCR. For these reasons, we affirm the trial court's judgment that Mount Hopewell's 2019 complaint is barred by the statutes of limitation and the savings statute.

## B. Mount Hopewell's Fraud Claim

Mount Hopewell states in its 2019 complaint that the causes of action it asserts arose from "the conduct, transaction, or occurrence set forth in the original pleading filed on July 28, 2009, which is the wrongful foreclosure of Plaintiff's property by Defendant." As Mount Hopewell acknowledges, the statute of limitations for its breach of contract claim is six years, and the statute of limitations for its fraud claim is three years. Nevertheless, Mount Hopewell argues, its fraud claim "is not barred by the statute of limitations because Mount Hopewell could not have been put on notice of FCR's fraudulent scheme through its inquiries, dealings, or conversations with FCR until December 2016 when FCR's board authorization, produced in discovery, showed that FCR had authority to reinstate the loan at a time when FCR represented that it could not until more requirements were met."[2] Mount Hopewell states that the fraud "consisted of the lack of disclosure of pertinent material information" that was set forth in a document titled "Consent Resolutions of the Board of Directors" ("Consent"). This document was attached as Exhibit H to Mount Hopewell's 2019 complaint and was eligible for consideration by the trial court in addressing FCR's motion to dismiss. *See* TENN. R. CIV. P. 10.03 (providing that exhibits attached to pleadings become "a part of the pleading for all purposes").

The Consent upon which Mount Hopewell relies is dated October 25, 2012, and it states, in pertinent part, as follows:

> WHEREAS, Company [FCR] and Hopewell Missionary Baptist Church, Inc. ("Hopewell") have entered into a new loan agreement regarding

---

set forth in Mount Hopewell's initial complaint, filed in 2009. However, Mount Hopewell nonsuited the 2018 complaint before a court was able to determine its viability.

[2]Mount Hopewell does not contend that the statute of limitations for its breach of contract claim should be tolled. Thus, Mount Hopewell seems to concede that its breach of contract claim is barred by the six-year statute of limitations.

the property located at 2911 Stokers Lane, Nashville, Tennessee 37218 (the "Property"); and,

WHEREAS, upon completion of the new loan documents and the purchase money financing for the new loan, Company will re-convey the Property to Hopewell under the following terms and conditions:

1) Principal loan amount: ONE MILLION FIVE HUNDRED TEN THOUSAND NINE HUNDRED FIFTY-EIGHT AND 60/100 DOLLARS ($1,510,958.60);
2) Interest rate: 7.25%;
3) At closing, Hopewell shall pay to Company the equivalent of eleven months of interest-only payments through the payment due November 2012 based on the New Loan Amount which shall be paid by certified funds;
4) Hopewell shall make an additional monthly interest-only payment for a period of one month following closing for the month of December 2012;
5) The monthly amortizing payments shall begin January 1, 2013, and shall continue monthly thereafter;
6) There is a ten (10) year balloon payment;
7) Payments are based on a twenty-five (25) year amortization schedule;
8) There is no prepayment penalty;
9) The origination fee shall be waived by the Company;
10) Effective Date shall be December 1, 2011.

Therefore, be it;

**RESOLVED**, that the Company shall re-convey the Property to the Hopewell under the terms of the new loan in the amount of ONE MILLION FIVE HUNDRED TEN THOUSAND NINE HUNDRED FIFTY-EIGHT AND 60/100 DOLLARS ($1,510,958.60).

Mount Hopewell asserts that FCR fraudulently concealed the Consent from it and that, pursuant to the discovery rule, the three-year statute of limitations applicable to fraud claims was tolled until December 2016, when Mount Hopewell first learned of the Consent during discovery. "Under the discovery rule, the statute of limitations will only begin to run when the plaintiff has actual knowledge of the claim, or when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that [it] has suffered an injury as a result of wrongful conduct." *Coffey v. Coffey*, 578 S.W.3d 10, 22 (Tenn. Ct. App. 2018).

To state an actionable claim for fraud, Mount Hopewell must show the following:

(1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false—that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) "that the misrepresentation relates to an existing or past fact[.]"

*Dog House Invs., LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)); *see also Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001). Rule 9.02 of the Tennessee Rules of Civil Procedure requires that "the circumstances constituting fraud . . . shall be stated with particularity." As we have explained, "[a] claim of fraud is deficient if the complaint fails to state with particularity an intentional misrepresentation of a material fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006). "To pass the particularity test, the actors should be identified and the substance of each allegation should be pled." *Id.* (citing *Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC,* 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002)).

In its 2019 complaint, Mount Hopewell's fraud claim is based on the following assertions:

50. On or about October 25, 2012, Defendant's Board approved a new loan and buyback transaction for the Plaintiff, but the Plaintiff was never informed of this approval and has continued to suffer irreparable harm as a result. (Exhibit H).

. . . .

54. On or about October 13, 2008, Defendant intentionally misrepresented to the Plaintiff that the $200,000 payment would stop the foreclosure and bring the account current and prevent foreclosure.

55. Plaintiff tendered payment and Defendant accepted payment on October 14, 2008 under the impression that the loan was current.

56. Between October 14 and November 18, 2008, Defendant intentionally misrepresented to the Plaintiff that the loan was current and foreclosure proceedings were stopped.

57. Defendant, with malicious intent, knowingly and recklessly misrepresented to the Plaintiff that bringing the loan current would prevent the foreclosure sale.

58. Plaintiff reasonably relied on this misrepresentation by the Defendant, paying $200,000 to the Defendant as a result thereof.

59. Defendant's misrepresentation related to the balance owed on the loan to bring the loan current and prevent foreclosure of Plaintiff's property.

60. In or around August 2012, Plaintiff and Defendant entered into discussions regarding the reinstatement of the loan.

61. Defendant informed Plaintiff that discussions were ongoing with management and that a large lump sum payment would be required for the reinstatement to be considered.

62. Unbeknownst to Plaintiff, on October 25, 2012, the Board of Directors of Foundation Capital unanimously approved a resolution which stated that the company "shall" convey the property to Plaintiff once certain conditions were met. (See Exhibit H).

63. Plaintiff was never informed that the resolution has been signed and approved, but instead was asked to pay $109,544.52 as a payment for negotiation of the re-conveyance.

64. On or about January 8, 2013, Plaintiff paid Defendant $109,544.52 which was the exact amount required for the previously approved reinstatement. (See Exhibits H & I).

65. Subsequently, on or about February 1, 2013 and February 21, 2013, Plaintiff sent Defendant two payments of $11,106.53.

66. In making these payments, Plaintiff had unknowingly fulfilled the final obligations required by the Board for reinstatement.

67. The Defendant kept the payments and never informed the Plaintiff of the approved negotiation nor sent them any of the required paperwork to complete the reinstatement.

68. Since that time, Plaintiff has continued to pay rent although the property remains in the Plaintiff's name.

69. Defendant has repeatedly and substantially misrepresented facts and deceived Plaintiff in an effort to prevent them from getting their property back despite Plaintiff's large continued efforts and large lump sum payments.

70.     As a result of Plaintiff's reliance upon the representations and misrepresentations of the Defendant, Plaintiff has incurred considerable financial loss and damages to Plaintiff's detriment.

Mount Hopewell's assertions in paragraphs 54-59 relate to misrepresentations and actions dating from 2008, and any claims based upon that conduct are barred by the three-year statute of limitations applicable to fraud claims.  The assertions contained in paragraphs 60-70 relate to the Consent, which Mount Hopewell alleges was fraudulently concealed from it.  As FCR points out, Mount Hopewell fails to identify in its 2019 complaint any intentional misrepresentation of a material fact that FCR made to it.  Mount Hopewell refers to a "reinstatement" of its loan, but nowhere in the Consent does the word "reinstatement" appear.  Moreover, the Consent merely authorized FCR to enter into a new loan agreement with Mount Hopewell and to re-convey the property to it if a number of conditions were satisfied.  Nowhere in the complaint does Mount Hopewell allege that the conditions identified in the Consent were satisfied.  Further, Mount Hopewell fails to assert that any misrepresentation by FCR "relates to an existing or past fact," as it must to constitute an element of fraud.  In the absence of an assertion of an intentional misrepresentation of an existing or past material fact by FCR, Mount Hopewell has failed to state an actionable claim for fraud.

In light of our conclusion that Mount Hopewell has failed to assert an actionable claim for fraud, we need not address whether Mount Hopewell is entitled to rely on the discovery rule to toll the statute of limitations for its fraud claim until 2016.

## C.  FCR's Claim for Damages

FCR asserts that Mount Hopewell's appeal is frivolous and that it is entitled to an award of damages pursuant to Tenn. Code Ann. § 27-1-122.  According to that statute,

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages based on this statute "rests solely in the discretion of this Court."  *Trigg v. Trigg*, No. E2014-00860-COA-R3-CV, 2015 WL 66544, at *10 (Tenn. Ct. App. Jan. 5, 2015).  We exercise our discretion to deny FCR damages pursuant to this statute.

### III. CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Mount Hopewell Missionary Baptist Church, for which execution may issue if necessary.

_/s/Andy D. Bennett_____
ANDY D. BENNETT, JUDGE