IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 22, 2014 Session

## JAMES G. AKERS v. MCLEMORE AUCTION COMPANY, LLC, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 10c4899     Hamilton V. Gayden, Jr., Judge**

**No. M2012-02398-COA-R3-CV - Filed May 27, 2014**

Plaintiff in action to recover for negligence, professional negligence, breach of duty, constructive fraud, constructive breach of contract, and inducement of failure to perform a lawful contract, appeals dismissal of various parties and claims; plaintiff also appeals a portion of the jury instructions, the jury's verdict awarding him $474.00, and the denial of his motion for a new trial. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

James G. Akers, Nashville, Tennessee, Pro Se.

Paul Richard White and Charles W. Cross, Nashville, Tennessee, for the appellees, McLemore Auction Company, LLC, and William T. McLemore.

## OPINION

This appeal arises out of a suit brought by James Akers against William T. McLemore ("McLemore") and McLemore Auction Company, LLC ("McLemore Auction"). Mr. Akers asserted causes of action for negligent misrepresentation, professional negligence, breach of duty, constructive fraud, constructive breach of contract, and inducement of failure to perform a lawful contract arising out of two contracts entered into on or about November 1, 2007.[1]

---

[1] The original complaint was filed December 14, 2010, and on December 22, prior to a responsive pleading being filed, Mr. Akers filed an Amended Complaint, which is the document which guided the case.

Mr. Akers and his wife[2] engaged McLemore Auction to auction real and personal property located at 543 Richmar Drive, Nashville; the contract for the auction of the real property provided that the auction was to be live, while the contract for the auction of the personal property provided that it was to be online. The complaint alleged that the Akers entered into the contracts in reliance on representations of McLemore that the real property would sell for at least $258,400 and that the auction of both the real and personal property should produce at least $76,000 in net proceeds to the Akers. The auction of the real property was held on December 8 and of the personal property on December 9.

Pertinent to the issues involved in this appeal, the complaint alleged that: the Akers turned over the keys to the property on November 14 and, between that date and December 8, various items of personal property valued at $4,500 disappeared from the home; neither McLemore nor McLemore Auction advertised either auction as required by the contracts; at the live auction McLemore ignored higher bids and declared the property sold for $110,000, after which the Akers declined to convey the real property[3]; shortly after the close of the online auction "unidentified persons" appeared at the home and began removing items of personal property; despite request, the Akers did not receive the result of the online auction[4]; that the Akers received releases from the real estate auction contract and the exclusive listing for the real property from McLemore and entered into a new listing agreement with Keller Williams Realty on February 2, 2008; the Akers sent McLemore a demand that all personal property be returned to the home, which demand was refused; and that the real property had a fair market value of $245,800 and the personal property a value of $112,430 on November 1, 2007.

Mr. Akers filed suit on December 14, 2010. In due course, McLemore and McLemore Auction filed motions pursuant to Tenn. R. Civ. P. 12.02 to dismiss the complaint for failure to state a claim and to dismiss the John Doe defendants for lack of personal jurisdiction. Following a hearing on the motion, the court entered an order on February 11, 2011: dismissing the causes of action for breach of duty, constructive fraud, constructive breach

---

References in this opinion to "the complaint" are to the Amended Complaint filed December 22. The complaint also named as defendants John Does No. 1 through 20, who were alleged to be employees or agents of McLemore Auction, and John Does No. 21 through 100, who were alleged to be bidders at the auctions which are at the center of this controversy.

[2] Ms. Akers was not a party to the suit.

[3] In the real property auction contract, the Akers retained the right to accept or reject the high bid price.

[4] An exhibit to the complaint reflected that the online auction produced $5,718.38.

of contract, inducement of failure to perform a lawful contract; dismissing all claims pertaining to the contract for the auction of real property; and dismissing William McLemore and the John Doe defendants as parties to the suit. As a result of the dismissal, McLemore Auction was the only remaining defendant and negligent misrepresentation and professional negligence were the remaining claims. On December 2, 2011, the court entered its Findings of Fact and Conclusions of Law "in support of its Order ruling on said motions and entered on the 11th day of February, 2011."[5]

The case proceeded to a three-day trial beginning September 18, 2012; and on September 21, the jury returned a verdict in favor of defendants on the professional negligence and negligent misrepresentation claims and a verdict in favor of plaintiff for $474.00.[6] Mr. Akers appeals, asserting that the court erred in dismissing certain of the claims and parties and in later failing to reinstate them, in denying his motion to pursue an interlocutory appeal, in giving certain instructions to the jury, and in denying his motion for a new trial.

## DISCUSSION

I. **DISMISSAL OF CLAIMS FOR BREACH OF DUTY, CONSTRUCTIVE FRAUD, INDUCEMENT OF FAILURE TO PERFORM A CONTRACT, AND CLAIMS RELATED TO THE AUCTION OF REAL ESTATE**

The standard applicable to the trial court's consideration of a motion to dismiss for failure to state a claim and of this court's review of the trial court's action was succinctly set forth in *Harris v. Gaylord Entertainment Co.*:

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint itself, not the strength of the plaintiff's proof. The standard of appellate review of a dismissal under Rule 12.02(6) requires that we take the factual allegations in the complaint as

---

[5] On February 23, 2011 Mr. Akers filed a "Request for Findings of Fact and Conclusions of Law" relative to the order entered on February 11 and he renewed his request on November 18; the December 2 filing was in response to Mr. Akers' request.

[6] The order memorializing the verdict stated in part: "The jury verdict rejected the claim of Professional Negligence and Negligent Misrepresentation. Having also been given jury instructions on claims and defenses under contract law, the jury returned a verdict for $474.00 in response to the question: 'What amount of damages, if any, do you find were sustained by the Plaintiff, James G. Akers?'" Defendants assert in their brief that in awarding damages to Mr. Akers the jury "apparently [thought] an outstanding bill of McLemore Auction to Mr. Akers was a counterclaim." Defendants do not appeal the verdict.

true. The trial court should grant a motion to dismiss only "when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

A court reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, and by giving the plaintiff the benefit of all inferences that can be reasonably drawn from the pleaded facts. For the purposes of such a motion, the moving party admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from those facts.

On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, this court must, like the trial court, presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint *de novo,* without a presumption of correctness.

*Harris*, No. M2013-00689-COA-R3-CV, 2013 WL 6762372, at * 3–4 (Tenn. Ct. App. Dec. 19, 2013), appeal denied (Apr. 9, 2014) (citations omitted).

## A. Breach of Duty

In his brief, Mr. Akers contends that the allegations support a cause of action for what he characterizes as "the tort of 'breach of duty'"; he references the definition of "breach of duty" in Black's Law Dictionary to define the cause of action.[7]

The complaint included twenty-eight numbered factual allegations, after which Mr. Akers asserted the various causes of action. With respect to the cause of action for breach of duty, the complaint stated:

---

[7] Black's Law Dictionary defines "breach of duty" as follows:

In a general sense, any violation or omission of a legal or moral duty. More particularly, the neglect or failure to fulfill in a just and proper manner the duties of an office or fiduciary employment. Every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence or arising through mere oversight or forgetfulness, is a breach of duty.

Black's Law Dictionary, 6th Ed. (1990).

4

47.   Plaintiff Akers re-alleges ¶¶ 4, 10(a), 11(a), (b), (c), & 15[8] which establish that a fiduciary relationship existed between Plaintiff Akers and the herein Defendants William T. McLemore & McLemore Auction Company, Inc.;

48.   Plaintiff Akers re-alleges ¶¶ 21, 23, 29, & 32[9] hereinabove which will establish that Defendants William T. McLemore and McLemore Auction Company, Inc., breached their fiduciary duties as alleged in ¶ 47 hereinabove; &

49.   Plaintiff Akers re-alleges ¶¶ 4, 10(a), 11(a), (b), 22(iv), 27-30, 32, & 35-38[10] which establish the manners and extent to which Akers has been injured by numerous breaches of duty by the Defendants William T. McLemore and McLemore Auction Company, Inc..

The complaint did not allege any facts to establish a fiduciary relationship which could lead to a legal duty owed to the Akers other than that arising from the contracts. Under Tennessee common law, there are two principal types of fiduciary status. The first category consists of relationships that are fiduciary *per se*, sometimes referred to as legal fiduciary, such as between a guardian and ward, an attorney and client, or conservator and incompetent. *See Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977); *Mitchell v. Smith*, 779 S.W.2d 384,

---

[8]   Paragraph 4 states that the acts giving rise to the breach of duty claim commenced on December 8, 2007, continued until February 8, 2008 and could not have been discovered by Akers prior to January 21, 2008; paragraphs 10 and 11 identify the parties; paragraph 15 alleges that the Akers executed the auction contracts in reliance on representations made by McLemore.

[9]   Paragraph 21 alleges that on December 8, 2007, Mr. Akers declined to accept the bid which had been declared by McLemore and that Akers was advised by McLemore that McLemore would continue to assert his contractual rights to list the property; paragraph 23 alleges that Mr. Akers requested but was not able to get information as to the results of the online auction; paragraph 29 alleges that on January 8, 2008, McLemore sent Mr. Akers a letter requesting a payment of $327.49; paragraph 32 alleges that on February 8, 2008, Mr. Akers renewed his demand for information relative to the online auction and for return of the personal property and that McLemore refused.

[10]   Paragraph 22(iv) alleges that John Does 21–100 began hauling away Mr. Akers' personal property on December 9, 2007; paragraphs 27-30 allege the content of a demand Mr. Akers sent to McLemore, that no response was received, Mr. Akers' demand for payment of $327.49, and that the Akers returned to Nashville from California on January 28, 2008, prepared to retrieve their personal property if McLemore would reveal the identities of bidders on the online auction; paragraph 32 alleges the February 8, 2008 demand for information relative to the online auction; and paragraphs 35–38 allege values for the real and personal property as well as the amounts of "equitable damages" and "pecuniary damages" sustained by the Akers.

5

389 (Tenn. Ct. App. 1989); *Parham v. Walker*, 568 S.W.2d 622, 625 (Tenn. Ct. App. 1978). The second category consists of relationships that are not *per se* fiduciary in nature, but arise in situations where one party exercised "dominion and control over another." *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002); *Matlock v. Simpson*, 902 S.W.2d 384, 385–86 (Tenn. 1995); *Kelly v. Allen*, 558 S.W.2d at 848.

No facts to establish the existence of such a fiduciary relationship which would give rise to a duty recognized in Tennessee were alleged; to the contrary, the complaint asserted that paragraphs which contained allegations relating to events leading to the execution of the auction contracts "establish that a fiduciary relationship existed between plaintiff Akers and . . . William T. McLemore and McLemore Auction Company, Inc." Clearly the relationship which created the duties which, in turn, gave rise to the causes of action arose from the auction contracts; the cause of action based on some other, unspecified duty was properly dismissed. To the extent Mr. Akers sought to assert a duty owed to him as an element of a tort claim, the court allowed the claims for negligent misrepresentation and professional negligence to proceed.

### B. Constructive Fraud

With respect to the cause of action for constructive fraud, the complaint stated:

Plaintiff Akers re-alleges ¶¶ 10 - 34 hereinabove which establish: (i) that a duty was owed to Akers by the Defendants William T. McLemore and McLemore Auction Company, LLC; (ii) violations of that duty by those defendants in the making of deceptive material misrepresentations of past or then existing facts and/or remaining silent when the duty to speak actually existed; (iii) Plaintiff Akers was thereby injured as a proximate result thereof; & (iv) all herein named defendants thereby gained an advantage over Akers at his expense and to their benefit.

The elements of a cause of action for constructive fraud were set forth in *Kincaid v. SouthTrust Bank*:

Constructive fraud is a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals. They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others.

Constructive fraud is essentially fraud without the element of intent.[11] Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud.

*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39–40 (Tenn. Ct. App. 2006) (citations omitted).

We have reviewed paragraphs 10 through 34. The only allegations which could be construed to constitute material misrepresentations of fact are the allegations in paragraph 12 that on October 28, 2007 McLemore "represented to Akers that their auction site was 'just like eBay'" and "represented to Akers that their auction of the Akers' real and personal properties 'should net at least $70,000 to Akers," and the allegation in paragraph 13 that on October 31 McLemore "represented to Akers that auction of the Akers' real and personal property should 'bring at least $76,000 net proceeds' to Akers." Construing these allegations in Mr. Akers' favor, we have determined that they fail to meet the standard of particularity required to establish a legal or equitable duty owed to Akers or a breach of any such duty; in addition, they do not constitute material misrepresentations.

The assertions as to the amount of proceeds that might be generated by the auctions are not representations of fact; rather, they are clearly predictions.[12] The allegation comparing the auction site to eBay is ambiguous at best and simply does not amount to a statement of fact, much less a misstatement.[13] In addition, there is no allegation that any

---

[11]

The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact.

*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)). A claim of fraud is deficient if the complaint does not state an intentional misrepresentation of a material fact with particularity. *Id.* at 41; *see also* Tenn. R. Civ. P. 9.02.

[12] Both contracts contain the following language: "[Akers] acknowledges that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Property at auction."

[13] The personal property auction contract provided:

Internet and Online Bidding - The Auctioneer shall use its best effort to ensure that for any sale at which Internet and online bidding is advertised it shall be available, however at any given sale certain circumstances concerning the Internet and the technology in use are

7

alleged injury to Mr. Akers was caused by his reliance on either of the assertions. The remaining allegations of the referenced paragraphs allege facts regarding particular actions taken or not taken by McLemore and/or McLemore Auction rather than conduct which was alleged to be deceptive.

## C. Inducement of Failure to Perform a Lawful Contract

For the cause of action for inducement of failure to perform a lawful contract, the complaint stated simply:

51. Plaintiff Akers re-alleges ¶¶ 1-11, 31, 33 & 35-39 of this Complaint.

In his claim for relief, Mr. Akers requests damages against McLemore "with respect to his specific acts in violation of Tennessee Code Annotated §47-50-109[14] as shown in ¶¶ 33, 34, 35(i), & 36(i)."

Paragraphs 1–11 are introductory paragraphs, setting forth the jurisdiction, venue and identity of the parties. Paragraph 31 alleges that Akers entered into a new listing agreement with Keller Williams Realty for the sale of the real estate on February 2, 2008; paragraph 33 alleges that on February 12 McLemore made statements to representatives of Keller Williams "to the effect that: (i) auction of the Akers' personal property 'was a huge success'; & (ii) they should be careful about that property because it will probably go to foreclosure and go for a lot less'"; paragraphs 35–39 allege the value of the Akers' real and personal property as of November 1, 2007 and December 1, 2010, and allege damages incurred by the Akers.

---

beyond the Auctioneer's control, and may not be available at any specific time.

Therefore Owner agrees that the Auctioneer shall be held harmless from any claims, costs or causes of action arising from the Auctioneer's failure to offer Internet and online bidding at any specific time.

[14] Tenn. Code Ann. § 47-50-109 states:

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

These allegations simply do not set forth facts which state a claim for procurement of breach of contract.[15]

### D. Claims Related to the Real Estate

In the order entered February 11, 2011, the trial court dismissed "all claims pertaining to the Contract between the parties to the auction of specified real property"; in the Finding of Fact and Conclusions of Law filed December 2, 2011 the court did not discuss the basis of its dismissal or, indeed, what claims were dismissed to the extent those claims were not covered in the specific causes of action dismissed. In their brief on appeal, Defendants assert that, dismissal of the claims "pertaining to the real estate" was proper since, when Mr. Akers rejected the bid price as was his right under the contract, the contract was performed.

This issue is not properly presented for review. There were six specific causes of action alleged in the complaint; four were dismissed and two proceeded to trial. As Mr. Akers notes in his brief on appeal, he did not assert a claim specific to the real property, as apparently contemplated in the court's order; it does not appear that he sought clarification of this matter in the trial court or to protect the record to accommodate appellate review. Moreover, the discussion of this issue in his brief wholly fails to comply with Tenn. R. App. P. 27.[16]

---

[15] In discussing this issue in his brief on appeal, Mr. Akers quotes from the order wherein the trial court sets forth the deficiencies in the complaint relative to this cause of action and states that "to whatever extent, if any, that Akers' complaint [was deficient], those deficiencies were either remedied or obviously **could have been remedied by amended complaint** if the Court had so deemed warranted." To the contrary, it is not the court's responsibility to cure deficiencies in a party's pleading.

[16] Mr. Akers' entire argument on this issue is as follows:

Akers **did not assert a claim** exclusively or separately attributable to or otherwise "pertaining to the contract...to auction specified real estate". Nonetheless, the Trial Court **repeatedly admonished Akers** – both prior to and during trial – to the effect that **no mention of the contract to auction Akers' real estate** located at 543 Richmar Drive, Nashville, Tennessee 37211 could be made **in any manner within hearing of the jury**. Whether **intentional or unintentional** – **planned or unplanned** – the result of the Trial Court's ruling with respect to this issue was extremely prejudicial limitations on the evidence proffered by Akers at trial.

9

Considering the record as a whole, we are unable to conclude that the court's language was more than dicta or that, in light of the disposition of the six specified claims, he suffered the loss of any right or prejudice to any claim. *See* Tenn. R. App. P. 36.[17]

## II. DISMISSAL OF WILLIAM T. MCLEMORE AND JOHN DOES 1-20.

### A. William T. McLemore

The complaint alleged the following with respect to McLemore:

(a) **WILLIAM T. MCLEMORE:** At all times relevant hereto: (i) having been a citizen of the United States of America and the State of Tennessee therein; (ii) having been a "person" and "party" as defined in T.C.A. § 47-1-201, ¶¶ (25) through (30); (iii) having represented himself as "President" but, in actuality, having been the sole proprietor and single managing "member" of the Limited Liability Company known and registered in the State of Tennessee as "McLemore Auction Company, LLC".

Mr. Akers proceeded to allege actions taken and statements made by McLemore which Mr. Akers asserted gave rise to the various causes of action discussed above.

As noted earlier, in ruling on a motion to dismiss for failure to state a claim, the court is obliged to take the relevant and material factual allegations of the complaint as true; the only question is whether those facts state a claim for relief. In the Findings of Fact and Conclusions of Law, however, the court stated the following relative to the dismissal of William McLemore:

The court finds that Mr. McLemore at all times acted in his capacity as agent for McLemore Auction Company and that there are no facts to support Plaintiff's allegation that he acted in his individual capacity or outside his scope as agent for McLemore Auction Company or represented to Plaintiff that he was acting outside his capacity as agent for such company at any time.

At no point did Mr. Akers allege that McLemore's actions were taken as agent of McLemore Auction or that specific actions he took and representations made were done as an individual, and there was no reason for the court to "find" that the actions McLemore took

---

[17] The dismissal of the claim for "constructive breach of contract" has not been presented as an issue on appeal.

were as agent of McLemore Auction. Taking the allegations relative to McLemore as true, there was no basis to dismiss him as a party.

We are persuaded, however, that, inasmuch as the negligent misrepresentation and professional negligence claims survived the motion to dismiss, no prejudice resulted to Mr. Akers as a result of the dismissal of McLemore. *See* Tenn. R. App. P. 36(b). Under other allegations in the complaint, liability for McLemore's actions and/or representations was imputed to McLemore Auctions.[18]

## B. John Doe Defendants 1-20

The complaint alleged the following relative to John Doe defendant 1-20:

**DOES NO. 1 THRU 20:** At all relevant hereto: (i) having represented themselves to be "employees" and/or "agents" of McLemore Auction Company, Inc., but, in fact, having covertly "doubled" as registered "buyers" of McLemore Auction Company, Inc.; (ii) having concealed their respective identities to Akers other than first names;[1] & (iii) being otherwise unknown to Akers with respect to their respective residencies and citizenships. The Defendant DOES No. 1 THRU 20 have no known service of process addresses.

---

[1] The single exception to this is with respect to a certain "Jonathan Dunn" who accompanied Defendant William T. McLemore during his first contact with Akers on, or about, October 28, 2007, and who exchanged only two e-mails with Akers on November 19 & 20, 2007. Subsequent to those dates, Akers has been unable to locate or identify the same Jonathan Dunn or obtain information with respect to his address or citizenship.

---

[18] The complaint alleged the following relative to McLemore Auction:

(b) **MCLEMORE AUCTION COMPANY, LLC:** Having been, at all times relevant hereto: (i) a "Limited Liability Company-Domestic" which was registered in the State of Tennessee on November 21, 2006; (ii) an entity which maintains a purported business address of "470 Woodycrest Avenue, Nashville, Tennessee 37210" yet functionally "managed" from the residence of Defendant William T. McLemore as shown hereinabove; (iii) an entity which, by its very nature, ownership, management, representations, accounting, and operations is an "alter ego" of herein above Defendant William T. McLemore as defined by the common laws of the United States of America and State of Tennessee therein; & (iv) and entity which has been the "conduit" by and through which all defendants named herein have injured Akers in his personal and real properties in those manners as hereinafter set forth in detail.

11

The complaint proceeded to allege that these defendants "appeared at and disappeared from" the Akers property at various times and that they were on the property on the date of the online auction.

The complaint does not make any allegation of fact relative to the John Doe defendants which would support any of the causes of action asserted in the complaint; moreover, under the allegation quoted above, any liability for the actions of the John Doe defendants was imputed to McLemore Auction. They were properly dismissed.

## III. OTHER MATTERS

Mr. Akers asserts that the court erred in giving various jury instructions; in failing to grant his motion for new trial on the grounds that the verdict was against the weight of the evidence, that "there was probable extrinsic/collateral jury bias" and that there was "possible tampering defendants' legal counsel [sic]". The presentation of these arguments in his brief, however, does not comply with Tenn. R. App. P. 27 and, indeed, is so deficient as to render us unable to conduct an appropriate review.[19]

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.


_____
RICHARD H. DINKINS, JUDGE

---

[19] The entire argument for each alleged error except the last is: "Akers restates herein the facts contained within [earlier numbered paragraphs from the "Trial Court Proceedings" section of the brief]." As to the last, Mr. Akers merely quotes what appears to be the headnote from a federal criminal proceeding wherein a case was remanded to the trial court for a hearing on an incident of possible jury tampering and states that the court should have granted his motion for a new trial.